STATE of Missouri, Respondent,

v.

Orlando TAYLOR,
Defendant/Appellant.

No. ED 98475.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 3, 2013.

Gwenda Renee, Robinson, Missouri Public Defender Office, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Andrew C. Hooper, Assistant Attorney General, Jefferson City, MO, for respondent.

*OPINION*

MARY K. HOFF, Presiding Judge.

Orlando Taylor (Defendant) appeals from the judgment upon his conviction by a jury for one count of possession of a controlled substance, heroin, in violation of Section 195.202, RSMo 2000,[1] for which he was sentenced to seven years' imprisonment. We affirm.

*Factual and Procedural Background*

Defendant does contest the sufficiency of the evidence to support his conviction. Viewed in the light most favorable to the verdict, the following evidence was presented at trial:

In February, 2010, the St. Louis Police Special Operations Unit received information from a confidential source that narcotics and firearms were being stored and sold by two individuals at a home in the City of St. Louis. The confidential source identified the individuals as "Dodo," an African–American man, 5'8" with thin build, long dreadlocks, and a goatee, and "Missy," whose given name was Cyntoria Lewis. Subsequently, police officers obtained a search warrant for the premises.

Officer Adam Feaman (Officer Feaman), Officer Daniel Book (Officer Book), and a SWAT team arrived at the premises to execute the search warrant. After the SWAT team knocked on the door, announced themselves, but received no answer after twenty seconds, they forcefully entered the premises. Shortly thereafter, Officer Feaman and Officer Book entered the premises.

Upon entering, Officer Feaman found Defendant in the living room, sitting in a chair, with his hands in flex cuffs behind his back. Defendant was the only person found inside the home. Defendant's hair

---

1. Unless otherwise indicated, all further statutory references are to RSMo 2000.

and goatee matched the description of "Dodo," as did his complexion, weight, and height. Officer Feaman identified himself, gave Defendant a copy of the search warrant, and advised Defendant that he was a target of the investigation.[2]

Officer Feaman picked up a black jacket that was lying on the couch. He found a loaded gun underneath the jacket resting on top of the couch cushion. After removing the magazine and round from the chamber, Officer Feaman seized the gun. Officer Feaman then searched the jacket and found Defendant's Missouri identification card inside the right front pocket, and a knotted bag, containing twenty six clear capsules of heroin inside the left front pocket.

Police officers searched the remainder of the premises, including two bedrooms. They found a second loaded gun in the rear bedroom, between the mattresses. On top of the dresser, police officers also found a bottle of Dormin, which is used to cut raw heroin, a scale, and another knotted bag, containing several clear capsules of heroin, which resembled those found in the jacket pocket. Also in the rear bedroom, police officers recovered mail addressed to "Cyntoria Lewis" and male clothing.

Defendant was subsequently placed under arrest for possession of a controlled substance. Following a jury trial, Defendant was found guilty as charged. The trial court sentenced Defendant to seven years' imprisonment. This appeal follows.

### Admission of Evidence of Firearm

In his first point, Defendant argues that the trial court abused its discretion in denying the defense's motion *in limine* to exclude evidence of Defendant's possession of a firearm, and in admitting such evidence, over defense counsel's objection, because it constituted inadmissible propensity evidence that was neither logically, nor legally, relevant and substantially prejudiced Defendant. We disagree.

"A trial court has broad discretion to admit or exclude evidence at trial." *State v. Forrest* 183 S.W.3d 218, 223 (Mo. banc 2006). The trial court's "exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances." *State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009). "[T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Forrest*, 183 S.W.3d at 223. "For evidentiary error to cause reversal, prejudice must be demonstrated." *Reed*, 282 S.W.3d at 837. "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Forrest*, 183 S.W.3d at 224.

Here, before trial, defense counsel requested that the trial court exclude evidence of the uncharged offense or bad act of unlawful possession of a firearm. Specifically, Defense counsel objected to the admission at trial of evidence about the gun found underneath the black coat, which contained Defendant's Missouri identification card, as being "unfairly prejudicial to [Defendant]."

The State argued for the admission of the evidence in that it would "give the jury a full picture of the search and what was recovered at the house" and "to show the defendant's knowledge of the controlled substance, given that it was found in such

---

**2.** Defendant had previously pled guilty to possession of a controlled substance in 2007 and again in 2009.

proximity to it." The trial court denied the *motion in limine,* stating that it was appropriate for the jury to get the full picture of what the search yielded.

At trial, Defense counsel again objected to the admission of State's Exhibits 10A through 10D, the gun found on the living room couch, and the magazine and rounds found inside the gun, but the objection was overruled by the trial court. Defense counsel also included this claim in his motion for a new trial, which the trial court denied.

■■■ Evidence of uncharged crimes or wrong acts committed by a defendant is inadmissible when its purpose is to show the defendant has a propensity to commit the crime for which he is standing trial. *State v. Primm,* 347 S.W.3d 66, 70 (Mo. banc 2011). However, such evidence may be admissible for other purposes, including to establish motive or intent to commit the crime with which the defendant is charged. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). Additionally, this type of evidence, when it is part of the surrounding circumstances or sequence of events relating to the charged crime, is "admissible to present a complete and coherent picture of the events that transpired." *Primm,* 347 S.W.3d at 70; *State v. Morgan,* 366 S.W.3d 565, 581 (Mo.App.E.D.2012). Further, the State has latitude to furnish this kind of complete picture to the jury. *State v. Flenoid,* 838 S.W.2d 462, 467 (Mo.App. E.D.1992).

■■■ To be admissible for this purpose, in fact for any purpose, evidence must be logically relevant, in that it tends to establish the defendant's guilt of the charged crime, and legally relevant, in that its probative value outweighs its prejudicial effect. *Morgan,* 366 S.W.3d at 581. However, "[r]elevant evidence is not inadmissible because it may be prejudicial." *Flenoid,* 838 S.W.2d at 468. The determi-

nation of whether any prejudice outweighs the probative value of evidence of uncharged acts is within the sound discretion of the trial court. *Id.*

■■■ In the instant case, evidence that a loaded gun had been found at the scene was admissible to present a complete and coherent picture of the events that transpired. Police had received information from a confidential informant that drugs and guns were being stored and sold out of the residence. When police executed the search warrant, they found both guns and drugs inside the residence.

■■■ The gun found under the jacket was also admissible because it was logically and legally relevant towards demonstrating that Defendant "constructively" possessed the heroin found inside the jacket. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992) (constructive possession is established when other facts support an inference that Defendant knew of the presence of the drugs). In addition, evidence of Defendant's contemporaneous possession of weapons was relevant and admissible to show that Defendant knowingly and intentionally possessed the heroin. *See State v. Dowell,* 25 S.W.3d 594, 603 (Mo. App.W.D.2000) (evidence of methamphetamine, a syringe, and a semi-automatic handgun seized from defendant's car during a traffic stop were admissible as relevant at trial for defendant's manufacturing a controlled substance in his home, to show defendant knowingly and intentionally possessed the controlled substance).

■■■ Finally, Defendant was not prejudiced because there was overwhelming evidence of his guilt. Defendant was the only person inside the home when it was searched by the police. In the living room, on the couch, was a jacket, inside of which officers found heroin pills as well as

Defendant's state-issued identification card. In the rear bedroom, officers also found male clothing, a second loaded pistol, a bottle of Dormin, which is used to cut raw heroin, a scale, and another knotted bag, containing several clear capsules of heroin, which resembled those found in the jacket pocket. The trial court did not err in admitting evidence of the gun because it provided a more complete picture of the circumstances surrounding the crime and was relevant in showing that Defendant possessed the drugs found inside the jacket. Point I is denied.

### Insufficient Evidence to Support Conviction

In his second point, Defendant argues the trial court erred in overruling his motion for judgment of acquittal at the close of all of the evidence because there was insufficient evidence to support Defendant's conviction of possession of a controlled substance, heroin, in that the State failed to prove beyond a reasonable doubt that Defendant actually or constructively possessed the heroin, knowing of its presence and illegal nature. We disagree.

■ "When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Wright*, 382 S.W.3d 902, 903 (Mo. banc 2012). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.* "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a

reasonable doubt." *Id.* We disregard all inferences contrary to the verdict, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). We may not supply missing evidence or give the State the benefit of unreasonable, speculative or forced inferences. *Id.*

■ Section 195.202 prohibits a person from possessing or having under his or her control a controlled substance. To sustain a conviction for possession of a controlled substance, the State must prove the following two elements: (1) conscious and intentional possession of the substance, either actual or constructive; and (2) awareness of the presence and nature of the substance. Section 195.202; *Purlee*, 839 S.W.2d at 587. The possession prong and the knowledge prong are not entirely independent, in that both require proof of the defendant's knowledge of the presence of the controlled substance. *Purlee*, 839 S.W.2d at 588.

■ "Possessed" or "possessing a controlled substance" is defined as follows:

[A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance, possession is sole. If two or more persons share possession of a substance, possession is joint.

Section 195.010(34), RSMo Cum.Supp. 2005. Proof of a defendant's knowledge often is supplied by circumstantial evidence of the acts and conduct of the defendant that permit an inference that he or she knew of the existence of the contraband. *Purlee*, 839 S.W.2d at 587. "Proof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found." *Id.* at 588. Exclusive control over the premises raises an inference of possession and control. *Id.* However, when there is joint control over the premises where the drugs are discovered, some further evidence or admission must connect the accused with the illegal drugs. *Id.* In other words, "[t]he State must present some incriminating circumstance that implies that the accused knew of the presence of the drugs and that the same were under his control." *Id.* at 587.

"A defendant's access to the areas where drugs are found and the presence of a large quantity of drugs both support an inference of possession and control, when consistent with the totality of the circumstances." *State v. Jackson*, 304 S.W.3d 791, 795 (Mo.App.W.D.2010). Personal belongings in close proximity to the drugs infer knowledge and control. *Id.* The "presence of a large amount of drugs together with access tends to show conscious possession." *Purlee*, 839 S.W.2d at 588. Finally, evidence of Defendant's contemporaneous possession of other drugs, weapons, money, or drug paraphernalia is relevant and admissible to show that Defendant knowingly and intentionally possessed the controlled substance. *Dowell*, 25 S.W.3d at 603.

Here, police officers arrived at the premises to execute the search warrant. Defendant was the only person found inside the home and he matched the description of "Dodo" provided by the confidential source. When Officer Feaman picked up a black jacket that was lying on the couch, he found a loaded gun underneath the jacket. After removing the magazine and round from the chamber, Officer Feaman seized the gun. Officer Feaman searched the jacket and found Defendant's Missouri identification card inside the right front pocket, and a knotted bag, containing twenty six clear capsules of heroin inside the left front pocket.

Upon further searching the premises, police officers found a second loaded gun in the rear bedroom, between the mattresses. In the rear bedroom, on top of the dresser, police officers found a bottle of Dormin, which is used to cut raw heroin, a scale, and another knotted bag, containing several clear capsules of heroin, which resembled those found in the jacket pocket. Officers also found male clothing in the rear bedroom.

Defendant's sole presence inside the residence at the time of the search raised a reasonable inference that he had access to and control over the premises where the drugs were found. Moreover, Defendant's physical appearance matched the description of "Dodo," who was allegedly one of the individuals selling guns and drugs from the residence.

However, because it did not appear that Defendant had exclusive control over the premises, the State was required to provide additional evidence that demonstrated that Defendant possessed the heroin. At trial, the State introduced evidence that both heroin and Defendant's state-issued identification card were found inside a jacket located in the living room. Based on the close proximity of Defendant's identification to the heroin, a reasonable juror could infer that Defendant possessed the heroin found inside the jacket. This inference is further supported by the gun that was contemporaneously found underneath the same jacket, as well as the

male clothing, a second loaded pistol, the bottle of Dormin, which is used to cut raw heroin, the scale, and second knotted bag containing several clear capsules of heroin, which resembled those found in the jacket pocket, that officers police found in the rear bedroom. From the record, the trial court did not err in overruling Defendant's motion for judgment of acquittal at the close of all of the evidence because there was sufficient evidence to support Defendant's conviction of possession of a controlled substance, heroin, beyond a reasonable doubt. Point II is denied.

### Closing Argument

In his third and final point, Defendant argues the trial court erred and abused its discretion in overruling defense counsel's objection to the State's personalization of its closing argument to the jury, in that the State invited jurors to place themselves in the position of those affected by drugs. We disagree.

A trial court has broad discretion in controlling the scope of closing argument and the trial court's rulings will be cause for reversal only upon a showing of abuse of discretion resulting in prejudice to the defendant. *State v. Hall*, 319 S.W.3d 519, 522 (Mo.App.S.D.2010). In determining the propriety of the closing argument, we interpret the challenged comment in light of the entire record rather than in isolation. *Id.* at 523. Furthermore, there must be a reasonable probability that the verdict would have been different had the error not been committed by the trial court. *Id.*

Here, during closing arguments, the prosecutor made the following statements to the jury: "Drugs are a major problem in this city. We heard about it yesterday in jury selection. Drugs ruin people's lives, they ruin families. People lose jobs. Think about all the people you heard yesterday talking about how drugs had affect-

ed their lives." Defense counsel objected to the argument on the grounds that it constituted improper personalization, but the trial court overruled the objection.

"Improper personalization is established when the State suggests that a defendant poses a personal danger to the jurors or their families." *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010). "Arguing for jurors to place themselves in the shoes of a party or victim is improper personalization that can only arouse fear in the jury." *Deck*, 303 S.W.3d at 540. "However, it is acceptable to argue that society is threatened by the conduct of the accused." *Hall v. State*, 16 S.W.3d 582, 585 (Mo. banc 2000). "Moreover, not every brief, isolated statement in argument that may be construed as improper personalization is of such magnitude that it undermines confidence in the outcome of the case so as to establish prejudice." *Id.*

The statements made by the prosecution during closing arguments did not amount to improper personalization because they did not suggest that Defendant represented a personal danger to the jurors or their families, nor did the prosecutor ask the jurors to place themselves or some other identifiable person in the shoes of the victim or at the crime scene. Rather, the prosecutor argued that society was threatened by Defendant's conduct, which was permissible. *Id.* The trial court did not err or abuse its discretion in overruling defense counsel's objection the State's closing argument. Point III is denied.

### Conclusion

The judgment is affirmed.

KURT S. ODENWALD, and ANGELA T. QUIGLESS, Judges, concur.