

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99088 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Montgomery County |
| vs. | ) | |
| | ) | Hon. Keith M. Sutherland |
| CHRISTOPHER ERIC HUNT, | ) | |
| | ) | Filed: |
| Appellant. | ) | January 28, 2014 |

Christopher Hunt ("Defendant") appeals from the judgment upon his conviction of one count of burglary in the first degree, Section 569.160 RSMo 2000[1], one count of property damage in the second degree, Section 569.120, and one count of assault in the third degree, Section 565.070. Defendant's convictions stem from acts committed during the arrest of Phil Alberternst ("Alberternst"). With respect to the charge of first-degree burglary, Defendant argues the trial court erred in submitting first-degree burglary to the jury and in failing to sustain Defendant's motion for acquittal at the close of the evidence: (1) because a first-degree burglary conviction cannot stand if the entry into an inhabitable structure by Defendant is not knowingly unlawful, and (2) because a conviction for first-degree burglary can stand only if there is evidence of Defendant's purpose and intent to commit a crime upon entering the dwelling. Defendant also argues the trial court erred in refusing to submit Defendant's proffered Instruction C on the charge of first-degree burglary because the instruction that was submitted in

---

[1] All further statutory references are to RSMo 2000 unless otherwise indicated.

its place, Instruction 5, did not allow the jury to consider the defense of justification. In his last argument related to the first-degree burglary charge, Defendant contends the trial court erred in allowing the State to offer the opinion testimony of Sergeant Travis Hitchcock on the question of whether Defendant lawfully entered the trailer. With respect to the property damage charge, Defendant argues the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and in submitting the charge of second-degree property damage in Instruction Number 6. Finally, with respect to the third-degree assault charge, Defendant contends the trial court erred in: (1) overruling his motion for judgment of acquittal at the close of all the evidence and in submitting the charge of third-degree assault because Defendant can only be guilty of third-degree assault if he did not have lawful authority to strike Alberternst in making the arrest, and (2) sustaining the State's objection to Brian Clay's testimony regarding whether Defendant properly used control strikes to subdue Alberternst. We affirm in part and reverse and remand in part.

## I. Facts

Viewed in the light most favorable to the verdict, the following facts were adduced at trial: Defendant is a St. Charles County Deputy Sheriff assigned to the St. Charles County Regional Drug Task Force ("St. Charles Task Force"), a multidistrict enforcement group ("MEG") operating under authority of Section 195.505. Other members of the St. Charles Task Force include Officer Deric Dull of the O'Fallon Police Department, St. Charles County Deputy Sheriff William Rowe, and Officer Dion Wilson of the Lake St. Louis Police Department.

Alberternst is a known methamphetamine manufacturer and seller. Prior to the events of February 5, 2009, Defendant had arrested Alberternst several times. During a recent arrest preceding the events in this case, Alberternst was transported to jail and was later released after

2

agreeing to become an informant for Defendant. Alberternst testified that he told Defendant "whatever he wanted to hear so [he] could get out" and he was not really intending to be an informant. Despite this, Alberternst did meet with Detective Chad Fitzgerald of the Warren County Sheriff's Department. Defendant set up the meeting, and Detective Fitzgerald questioned Alberternst about a felony child endangerment case. By February 5, 2009, an arrest warrant had been issued in Warren County for Alberternst for child endangerment. Additionally, an arrest warrant had been issued in Lincoln County for Alberternst related to the manufacturing of methamphetamine.

In his subsequent attempts to locate and arrest Alberternst, Detective Fitzgerald met with two informants: Sheila Singleton and Ruth Ann Blake. Ms. Blake testified that by February 5, 2009, Alberternst had been hiding out at Carla Reed's trailer for at least two weeks while cooking methamphetamine in the woods. Ms. Blake is the mother of Alberternst's child and had known Alberternst for about six years. She was aware of prior dealings between Defendant and Alberternst, which on one occasion resulted in a handcuffed Alberternst getting backhanded by Defendant. Ms. Blake agreed to help Detective Fitzgerald because she was afraid for Alberternst's safety in light of the prior dealings, which also included Alberternst falsely agreeing to be an informant so he could get released from custody. Ms. Blake was assured by Detective Fitzgerald that Defendant would not be present for Alberternst's arrest.

On February 5, 2009, the officers gave Ms. Blake four boxes of pseudoephedrine because she had promised to deliver pills to Alberternst. They also placed a tracker on her vehicle. Ms. Blake's tracker subsequently stopped working, but the officers eventually learned that Ms. Blake went to Ms. Reed's trailer in Montgomery County. Ms. Singleton informed police that Ms.

3

Blake had called her and told her she was there with Alberternst. Thereafter, the police also learned the address for Ms. Reed's trailer.

Upon learning Ms. Blake and Alberternst's location, a number of police officers were notified of the pending arrest. At around 8:00 p.m., Sergeant Eric Leuchtefeld, Officers Robert Menconi, and Aaron Sutton of the East Central Drug Task Force, Officers Dull, Rowe, and Wilson of the St. Charles Task Force, Deputy Tom Mayes from Montgomery County, and Detective Fitzgerald, Lieutenant Schoenfeld, and Detective Doerr from Warren County gathered at a staging area near Ms. Reed's trailer.

A few officers subsequently approached the trailer, noticing Ms. Blake's car was parked in front. Sergeant Leuchtefeld testified he and Detective Fitzgerald went up to the door, and he banged on the front door of the porch and announced "Sheriff's Department, answer the door." No one answered. Detective Fitzgerald shined his light on the porch, but did not see anyone. The officers testified no lights were visible inside the trailer. The officers then moved back to form a perimeter.

Defendant subsequently arrived at Ms. Reed's trailer, pulling his truck in front of the trailer. Officers Wilson and Rowe, members of the St. Charles Task Force with Defendant, had called Defendant to inform him of the pending arrest. Detective Fitzgerald testified Defendant exited his vehicle, then looked at Detective Fitzgerald and did "the head nod thing." Sergeant Leuchtefeld testified Defendant put on a tactical vest, walked up to the door to the porch, then kicked the door in. Once inside the porch, Defendant tried to open the door that led into the trailer. Defendant obtained a knife and pried open the door to the trailer. Defendant and the other members of the St. Charles Task Force then entered the trailer, yelling "police" and "all that kind of stuff." Detective Fitzgerald followed them inside. Upon hearing the yelling and

4

screaming, Deputy Mayes also entered the trailer. Due to the ensuing commotion, Sergeant Luechtefeld, Lieutenant Schoenfeld, and Detective Doerr also entered the trailer.

Once inside, the officers found Ms. Blake on the couch covered with a blanket. Officer Rowe took her by the wrists, got her to the floor and asked for Alberternst's location. Ms. Blake informed him Alberternst was in the bathroom. Alberternst was unable to find his clothes, but was wrapped in a towel. Naked, he stuck his hands out into the hallway, and Defendant grabbed Alberternst and took him to the floor. Alberternst was "passively resisting" arrest, but did not try to hit the officers. Deputy Mayes testified Alberternst said "You've got me, I give up." However, Deputy Mayes also testified, "the control tactics continued." Deputy Mayes testified the St. Charles officers, including Defendant, struck Alberternst in the "upper area, shoulders and head area."

Sergeant Luechtefeld testified Alberternst was not resisting, but he was also not following their commands, and was instead "trying to protect his head or curl up" and "his hands were flailing" as he tried to prevent himself from getting hit. Sergeant Luechtefeld and Deputy Mayes both testified Alberternst was kicking his legs. Sergeant Luechtefeld testified Alberternst's movements looked "defensive" in nature. Detective Fitzgerald testified Defendant was kneeling with his face right next to Alberternst's screaming "you want to kick my a** now mother f*****." After the officers got Alberternst handcuffed, Deputy Mayes testified the strikes stopped.

After Officer Rowe put pants on Alberternst, Deputy Mayes took him to jail, then to the hospital, because they did not want to accept him and put him in a cell if he was injured. Alberternst was released from the hospital immediately, receiving no stitches.

5

The State charged Defendant with burglary in the first degree for entering the trailer with the intent to commit assault therein, property damage in the second degree for breaking down the door when entering the trailer, assault in the third degree for striking Alberternst during the arrest, and making a false police report. The State later dismissed the charge of making a false police report.

Following a jury trial, Defendant was found guilty of burglary in the first degree, property damage in the second degree, and assault in the third degree. The trial court sentenced Defendant to five years of imprisonment for burglary, three months of imprisonment for property damage, and six months of imprisonment for assault, to be served concurrently for a total of five years. This appeal follows.

We will address Defendant's points out of order to enhance the logical flow of this opinion. We will begin, however, by addressing Defendant's first point.

## II. First-Degree Burglary

In his first point, Defendant argues the trial court erred in submitting first-degree burglary to the jury and in failing to sustain Defendant's motion for acquittal at the close of the evidence because a first-degree burglary conviction cannot stand if the entry into an inhabitable structure by Defendant is not knowingly unlawful and it was lawful for Defendant to enter the premises where Alberternst was found to arrest him on two outstanding felony arrest warrants.

We review the denial of a motion for a judgment of acquittal to determine whether the State adduced sufficient evidence to make a submissible case. State v. Acevedo, 339 S.W.3d 612, 617 (Mo. App. S.D. 2011). The function of the reviewing court is not to reweigh the evidence, but only to determine if the State's case was supported by sufficient evidence. Id. In determining whether there is sufficient evidence to support the State's case, we accept as true all

6

evidence tending to prove guilt together with all reasonable inferences that support the finding. Id. We review questions of law *de novo*. Id.

Defendant raises both a question of law and questions of fact in this point. We will discuss the question of law first. The question of law, as stated by Defendant, is, in the general sense, does Defendant serving as a member of a MEG have authority to make an arrest of a person known to him to be the subject of two felony arrest warrants by forcible entry of an inhabitable structure in a county in which he is not a deputy?

The answer to that question in this case is yes. In this case, Defendant was a Deputy Sheriff in St. Charles County and a member of a MEG formed pursuant to Section 195.505 for the purpose of intensive professional investigation of drug law violations. Section 195.505.2 provides:

> [t]he power of arrest of any peace officer who is duly authorized as a member of a MEG unit shall only be exercised during the time such peace officer is an active member of a MEG unit and only within the scope of the investigation on which the MEG unit is working. Notwithstanding other provisions of law to the contrary, such MEG officer shall have the power of arrest, as limited in this subsection, anywhere in the state and shall provide prior notification to the chief of police of the municipality in which the arrest is to take place or the sheriff of the county if the arrest is to be made in his venue.

The MEG had been summoned for the purpose of arresting Alberternst on two felony arrest warrants. Further, there is no evidence in the record demonstrating Defendant was told he was not to participate in the arrest. In addition, we note the State concedes Defendant, as a member of a MEG, had legal authority to arrest Alberternst in the general sense. In addition, according to Section 544.200, Defendant had authority to break open any outer or inner door or window of a dwelling house in effecting an arrest. Thus, in the general sense, Defendant, as a member of the MEG, had authority to break into a structure in Montgomery County to arrest Alberternst.

7

We now turn to the factual issues raised in this point. In particular, we address the question of whether Defendant had authority, under the specific circumstances presented in this case, to break down the door and enter the trailer to arrest Alberternst. With regard to these issues, we look at the facts in the light most favorable to the verdict, and we find in this case, as it was instructed at trial, the State made a submissible case that Defendant committed first-degree burglary.

The facts supporting this conclusion are as follows: First, there is disputed evidence regarding whether the trailer can be considered Alberternst's residence. This evidence is critical to the determination of whether, under the specific circumstances presented in this case, Defendant had authority to break down the door and enter the trailer to arrest Alberternst.

For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within. Payton v. New York, 445 U.S. 573, 603 (1980). To satisfy the first prong of the Payton test, the officers must reasonably believe the defendant lived in the residence at the time of entry. U.S. v. Gay, 240 F.3d 1222, 1227 (10th Cir. 2001). The officers' belief need not prove true in fact; it is sufficient if the belief was objectively reasonable at the time of entry. Id. In addition, the defendant need not actually live in the residence, so long as he "possesses common authority over, or some other significant relationship to, the residence entered by police." Id. "People do not live in individual, separate, hermetically sealed residences, but live with other people; they move from one residence to another." Id. Where a defendant possesses common authority over, or some other significant relationship to the residence, it can certainly be considered his "home" for Fourth Amendment purposes, even if the premises are

8

owned by a third party and others are living there, and even if a defendant concurrently maintains a residence elsewhere as well. U.S. v. Risse, 83 F.3d 212, 217 (8th Cir. 1996).

However, even though disputed, taking the evidence in the light most favorable to the verdict and ignoring all contrary evidence and inferences, we find the State made a submissible showing that the structure was not his residence. Detective Fitzgerald testified the trailer was Ms. Reed's. Detective Schoenfeld testified he had no reason to believe Alberternst was living there. In addition, Alberternst testified he did not receive his mail there, and he was not living at the trailer, but was "just hidin[g] out there." Further, even if the trailer is determined to be Alberternst's residence or Defendant's belief that it was his residence is deemed to be reasonable, Defendant still had to have a reasonable belief the Alberternst was inside the trailer. See Payton, 445 U.S. at 603. The record contains scant evidence of what Defendant knew regarding the situation. Defendant was not present at the staging area. Later, Officer Wilson called Defendant to the scene, but what he said to Defendant about the situation is unknown. Defendant arrived at the scene after a few officers had already knocked on the door and received no answer. Further, the evidence showed Defendant arrived on the scene, immediately put on his tactical vest, and then went to break down the door. Lastly, it was divulged at trial that Defendant had prior dealings with Alberternst, which resulted in a contentious relationship between the two. Therefore, based on this evidence, it is clear that a jury had sufficient evidence to conclude, under the jury instructions it was given, that Defendant did not have the specific authority to break down to the door of the trailer at this time to effectuate Alberternst's arrest either because the residence was not Alberternst's or because his belief that Alberternst was inside was unreasonable.

As a result, we find the State made a submissible case to submit first-degree burglary to the jury and the trial court did not err in failing to sustain Defendant's motion for acquittal at the close of the evidence on this issue.

Next we will address Defendant's fourth point. In his fourth point, Defendant argues the trial court erred in submitting first-degree burglary against Defendant to the jury and failing to sustain Defendant's motion for judgment of acquittal at the close of the evidence because a conviction for first-degree burglary can stand only if there is evidence of Defendant's purpose and intent to commit a crime upon entering the dwelling.

Our finding here is similar to our finding on point one. The State provided sufficient evidence showing Defendant arrived at the scene after a few officers had already knocked on the door and received no answer and no one had seen anyone inside. Further, the evidence showed Defendant arrived on the scene, immediately put on his tactical vest, and then went to break down the door. In addition, it was divulged at trial that Defendant had prior dealings with Alberternst, which resulted in Defendant hitting Alberternst while Alberternst was wearing handcuffs on a previous occasion. There was also evidence that Ms. Blake did not want Defendant to participate in the arrest because she was afraid he would injure Alberternst. Further, there was evidence Defendant repeatedly struck and verbally taunted Alberternst while subduing him in the trailer.

From this evidence, a jury could reasonably conclude Defendant entered the trailer with the purpose and intent to commit assault. Therefore, we find the State made a submissible case to submit first-degree burglary against Defendant to the jury and the trial court did not err in failing to sustain Defendant's motion for judgment of acquittal at the close of the evidence on this issue.

Next we will deal with Defendant's claim of instructional error in his third point. In his third point, Defendant argues the trial court erred in refusing to submit Defendant's proffered Instruction C on the charge of first-degree burglary because the instruction that was submitted in its place, Instruction 5, did not allow the jury to consider the defense of justification.

Initially, we note that in responding to Defendant's third point, the state concedes the trial court should have defined "entered unlawfully" and "might also need to explain to the jury when a law enforcement officer might be privileged to enter" or, in other words, justified in entering. Thus, we begin our examination of Defendant's third point by determining the effect of the State's concession. The State admits because of the trial court's failure to define "entered unlawfully" and to give a justification instruction, the case should be remanded for a new trial on the first-degree burglary charge. In its brief, the State asserts "there is a risk that the jury did not accurately ascertain whether [Defendant's] entry into the trailer was lawful. Absent specific guidance about the law governing law enforcement officers' actions in entering private residences, the jury may not have accurately discerned whether [Defendant's] entry into the trailer was lawful."

We note Defendant did not specifically raise the issue of the trial court's failure to define "entered unlawfully" at trial. However, Rule 30.20 provides in pertinent part: "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict and caused manifest injustice or miscarriage of justice. State v. Thompson, 390 S.W.3d 171, 177 (Mo. App. E.D. 2012).

11

Section 569.160 defines the crime of first-degree burglary as follows:

A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:

(1) Is armed with explosives or a deadly weapon or;

(2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or

(3) There is present in the structure another person who is not a participant in the crime.

Thus, Section 569.160 requires a defendant to act knowingly, which means he is aware of the nature of his conduct or that some attendant circumstances exist. Section 562.016.3. Further, Section 569.010 defines "enter unlawfully or remain unlawfully" as when "a person 'enters unlawfully or remains unlawfully' in or upon premises when he is not licensed or privileged to do so." However, the jury was not instructed as to this definition or any other definition, even though the Notes On Use for MAI 323-52 Burglary in the First Degree provide that the term "enter unlawfully" may be defined by the court.

In this case, Instruction 5 provided:

As to Count I, [if] you find and believe from the evidence beyond a reasonable doubt:
First, that on or about February 5, 2009, in the County of Montgomery, State of Missouri, [Defendant] knowingly entered unlawfully an inhabitable structure located at 92 Hwy T, Middletown, Missouri and possessed by Carla Reed, and
Second, that [Defendant] did so for the purpose of committing the crime of assault therein, and
Third, that while [Defendant] was in the inhabitable structure, Ruth Ann Blake was present and Ruth Ann Blake was not a participant in the crime,
then you will find [Defendant] guilty under Count I of burglary in the first degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Defendant] not guilty of that offense.

The crime of "assault" occurs when a person knowingly or recklessly causes or attempts to cause[] physical injury to another person, or purposely places another person in apprehension of immediate physical injury, or knowingly causes physical contact with another person knowing the other person will regard the contact as offensive or provocative.

Nowhere in Instruction 5 or in any other instruction does the trial court tell the jury what would constitute an unlawful entry by this Defendant. Because Defendant's lawful authority to enter the trailer is disputed, we agree with the State's concession and find the trial court plainly erred in failing to instruct the jury regarding what would constitute an unlawful entry by this Defendant. Such an instruction should include a definition of "unlawful entry" and also should explain to the jury when a law enforcement officer might be justified in entering. We find the failure to give such an instruction in this case affected the jury's verdict and caused manifest injustice or miscarriage of justice. Therefore, we find Defendant is entitled to a new trial with a properly instructed jury on the charge of first-degree burglary.

Thus, we have found the instruction the trial court gave, Instruction 5, was defective. Now we turn to Defendant's argument that his proffered Instruction C should have been given. Defendant failed to include this claim of error in his motion for new trial. Therefore, our review again is for plain error only. Rule 30.20.

Defendant's proffered Instruction C added a fourth requirement to Instruction 5, which is quoted above. Instruction C added the following requirement: "Fourth, that [Defendant] did not act as a law enforcement officer lawfully using force to make an arrest as submitted in Instruction No. ___."

As noted above, we have already determined we need to remand for a new trial on the first-degree burglary charge due to instructional error because of the trial court's failure to define "enter unlawfully" and to explain to the jury when a law enforcement officer might be justified

13

in entering. Defendant's proffered Instruction C essentially provides part of a proper instruction on first-degree burglary in this case, as it allows the jury to consider when a law enforcement officer might be justified in entering. The fourth requirement it provides for the first-degree burglary instruction requires the jury to consider the definition of "enter unlawfully" and any justification defense as it applies the facts of the case because those factors are critical to determining whether Defendant "act[ed] as a law enforcement officer lawfully using force."

Defendant also contends Instruction C was supported by Section 563.021, which states: "Unless inconsistent with the provisions of this chapter defining the justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when such conduct is required or authorized by a statutory provision or by a judicial decree." Further, Section 544.200 expressly permits a law enforcement officer to use force to enter the dwelling of another when the dwelling is occupied by a person who is the subject of a felony arrest warrant. Section 544.200 provides: "To make an arrest in criminal actions, the officer may break open any outer or inner door or window of a dwelling house or other building, or any other enclosure, if, after notice of his office and purpose, he be refused admittance." We agree with Defendant's contention that these statutes should be incorporated in the trial court's instruction defining "entered unlawfully" and describing when a law enforcement officer might be justified in entering. Thus, we find the trial court erred in rejecting the justification defense in Instruction C.

On remand, the supporting statutes and the requirement of Instruction C that Defendant must not have acted as a law enforcement officer lawfully using force to be found guilty of first-degree burglary should be included in the trial court's instruction defining "entered unlawfully" and describing when a law enforcement officer might be justified in entering. Further, the trial

14

court's instruction should incorporate relevant case law to allow the jury to consider whether Defendant had the specific authority at the time of this incident to enter the trailer because he reasonably believed Alberternst "lived" in the trailer and he reasonably believed Alberternst was present in the trailer. See e.g. Payton, 445 U.S. at 603; Gay, 240 F.3d at 1227; Risse, 83 F.3d at 217. The trial court's instruction should correspond to the unique facts of this case, which involve a police officer being charged with burglary while arguably acting in the course of his duties.

Finally, we turn to Defendant's other point related to the first-degree burglary, his second point. In his second point, Defendant argues the trial court plainly erred in allowing Sergeant Hitchcock to offer opinion testimony on whether Defendant's entry into the trailer was lawful.

Due to our handling of Defendant's third point concerning instructional error and, in particular, our finding Defendant is entitled to a new trial on the first degree burglary charge, we find this issue is moot. An appellate court will not consider academic, moot, or abstract questions in criminal cases. State v. Brock, 113 S.W.3d 227, 233 (Mo. App. E.D. 2003). An issue is moot when the question presented for decision seeks a judgment upon some matter, which if judgment were rendered, could not have any practical effect upon any then existing controversy. State v. Smith, 229 S.W.3d 85, 98 (Mo. App. W.D. 2007). We need only review such an issue when it is likely to come up again on remand. Id.

In this case, we have no way of knowing whether the issue of Sergeant Hitchcock's testimony will arise since that issue is totally reliant on the record that will be made at trial on remand. See id. Hence, rather than speculating as to what the record may or may not be at trial on remand, we decline review of the issue of whether the trial court plainly erred in allowing

15

Sergeant Hitchcock to offer opinion testimony on whether Defendant's entry into the trailer was lawful. See id. Therefore, Defendant's second point is dismissed as moot.

Therefore, to conclude the first-degree burglary discussion, we reiterate while the State made a submissible case for first-degree burglary at trial, the jury was incorrectly instructed and Defendant is entitled to a new trial with a properly instructed jury on the charge of first-degree burglary.

### III. Property Damage

In his fifth point, Defendant argues the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and in submitting the charge of second-degree property damage in Instruction Number 6 because Defendant had legal authority to use force to break open any outer or inner door to effectuate the arrest of Alberternst.

At the outset of our analysis on this point, we note, as with points one and four above, there was sufficient evidence to submit the charge of second-degree property damage to the jury. While, as noted above, Defendant had the general authority to break down doors to make an arrest, the question is whether he had the specific authority, under the circumstances here, to break down the trailer door to arrest Alberternst. Based on the same evidence detailed in points one and four, we find there is sufficient evidence in the record for the jury to conclude Defendant did not have this specific authority in this case. Therefore, the trial court did not err in overruling Defendant's motion for judgment of acquittal at the close of all the evidence and in submitting the charge of second-degree property damage.

However, due to our finding on point three regarding the instructional error on first-degree burglary, we also must examine whether the trial court plainly erred in submitting the charge of property damage as it was submitted in Instruction 6.

16

Instruction Number 6 provided:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

That on or about February 5, 2009, in the County of Montgomery, State of Missouri, [Defendant] knowingly damaged an entrance to the residence located at 92 Highway T, Middletown, Missouri possessed by Carla Reed by kicking in the door and breaking the door jamb,

then you will find [Defendant] guilty under Count II of property damage in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As noted previously, Section 544.200 gives officers the authority to break open any outer or inner door or window of a dwelling house or other building, or any other enclosure to make an arrest in criminal actions. We have already concluded the trial court should have defined "entered unlawfully" and described when a law enforcement officer might be justified in entering on the first-degree burglary count. The charge of property damage was also dependent on whether Defendant "entered unlawfully" or was justified in entering. Further, we note at oral argument the State conceded "it was arguable" that the same error was made on the property damage count. As a result, because Defendant is entitled to a new trial on the first-degree burglary due to the trial court's failure to define "entered unlawfully" or to describe when a law enforcement officer might be justified in entering for the jury, Defendant is also entitled to a new trial on the charge of property damage for the same reason. In any subsequent trial, the trial court should define "enter unlawfully" as it pertains to the charge of property damage and shall include any possible defenses of justification in its definition. Further, as with the first-degree burglary instruction, the trial court's property damage instruction should incorporate relevant case law to allow the jury to consider whether Defendant had the specific authority at the time of

17

this incident to enter the trailer because he reasonably believed Alberternst "lived" in the trailer and he reasonably believed Alberternst was present in the trailer. See e.g. Payton, 445 U.S. at 603; Gay, 240 F.3d at 1227; Risse, 83 F.3d at 217.

Therefore, while the State made a submissible case for property damage at trial, the jury was incorrectly instructed and Defendant is entitled to a new trial with a properly instructed jury on the charge of second-degree property damage.

## IV. Third-Degree Assault

In his sixth point, Defendant argues the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and in submitting the charge of third-degree assault because Defendant can only be guilty of third-degree assault if he did not have lawful authority to strike Alberternst in making the arrest, which he claims he had in this case.

Section 565.070 provides, in pertinent part, that a person commits the crime of assault in the third degree if the person attempts to cause or recklessly causes physical injury to another person. On this count, the jury was instructed as follows: First, Instruction Number 7 provided:

> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about February 5, 2009, in the County of Montgomery, State of Missouri, [Defendant] attempted to cause physical injury to [Alberternst] by striking him,
> Second, that [Defendant] did not act as a law enforcement officer lawfully using force to make an arrest as submitted in Instruction No. 8,
> then you will find [Defendant] guilty under Count III of assault in the third degree.
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Defendant] not guilty of that offense.
> As used in this instruction, a person attempts to cause physical injury when, for the purpose of causing that result, he does an act which is a substantial step towards causing that result. A substantial step is conduct which is strongly corroborative of the firmness of the person's purpose to cause that result.
> The following term used in this instruction is defined as follows:

18

Physical injury means physical pain, illness, or any impairment of physical condition.

In addition, Instruction Number 8 provided:

One of the issues as to Count III is whether the use of force by [Defendant] against [Alberternst] was the lawful use of force by a law enforcement officer in making an arrest. In this state, the use of force by a law enforcement officer in making an arrest is lawful in certain situations.

A law enforcement officer can lawfully use force to make an arrest or to prevent escape if he is making a lawful arrest or an arrest which he reasonably believes to be lawful. An arrest is lawful if the officer had reasonable grounds to believe that the person being arrested had committed a crime or was acting under an arrest warrant which he believed to be valid.

In making a lawful arrest or preventing escape after such an arrest, a law enforcement officer is entitled to use such force as reasonably appears necessary to effect the arrest or prevent the escape.

A law enforcement officer in making an arrest need not retreat or desist from his efforts because of resistance or threatened resistance of the person being arrested.

As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

On the issue of use of force by a law enforcement officer as to Count III, you are instructed as follows:

If [Defendant] was a law enforcement officer making or attempting to make a lawful arrest or what he reasonably believed to be a lawful arrest of [Alberternst] for the crimes of Endangering the Welfare of a Child and Manufacturing Methamphetamine and used only such force as reasonably appeared to be necessary to effect the arrest or to prevent the escape of [Alberternst], then his use of force was lawful.

The state has the burden of proving beyond a reasonable doubt that [Defendant] was not entitled to use force as a law enforcement officer. Unless you find beyond a reasonable doubt that [Defendant] was not entitled to use force as a law enforcement officer against [Alberternst], you must find [Defendant] not guilty under Count III.

Thus, unlike the first-degree burglary and property damage counts, on the third-degree assault count, the jury was allowed to consider whether Defendant was "act[ing] as a law enforcement officer lawfully using force to make an arrest" and was instructed on what circumstances allow a use of force and what constitutes a lawful use of force.

19

The evidence supporting the charge of third-degree assault was as follows: Once inside the trailer, the officers found Ms. Blake on the couch covered with a blanket. Officer Rowe took her by the wrists, got her to the floor and asked for Alberternst's location. Ms. Blake informed him Alberternst was in the bathroom. Alberternst was unable to find his clothes. Naked, he stuck his hands out into the hallway so the officers could handcuff him. Defendant grabbed Alberternst and took him to the floor. Alberternst did not try to hit the officers. As the officers subdued Defendant, Alberternst said "You've got me, I give up." However, Deputy Mayes later testified, "the control tactics continued." The St. Charles officers, including Defendant, struck Alberternst in the "upper area, shoulders and head area." Defendant struck Alberternst in the head several times. Sergeant Luechtefeld later testified Alberternst was not following their commands, but was instead "trying to protect his head" and "trying to prevent himself from getting hit." Detective Fitzgerald testified Defendant was kneeling with his face right next to Alberternst's screaming "you want to kick my a** now mother f*****." After the officers got Alberternst handcuffed, the strikes stopped. Thus, based on this evidence, we find there was sufficient evidence in the record for the jury to reasonably conclude Defendant did not act as a law enforcement officer lawfully using force to make an arrest, but rather that he assaulted Alberternst. Therefore, we find the State also made a submissible case on the third-degree assault charge, and the trial court did not err in overruling Defendant's motion for judgment of acquittal at the close of all the evidence.

In his seventh point, Defendant argues the trial court prejudicially erred in sustaining the State's objection to Brian Clay's testimony regarding whether Defendant properly used control strikes to subdue Alberternst. We disagree.

20

A trial court has broad discretion to admit or exclude evidence at trial. State v. Taylor, 407 S.W.3d 153, 157 (Mo. App. E.D. 2013). The trial court's exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances. Id. That discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Id. For evidentiary error to cause reversal, prejudice must be demonstrated. Id. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial. Id.

Defendant called Clay to provide expert testimony regarding control strikes. Defendant stated at one point "[Clay] is going to review the photos and see if the photos and the injuries depicted in them are consistent with his training. I think he is allowed to do that and I think that evidence needs to go to the jury to show that it was consistent with the training that the officers received." The State objected to having Clay testify regarding the photos, and the trial court sustained the objection.[2]

Before even considering whether Defendant was prejudiced by the exclusion of Clay's testimony, we note all of the evidence about control tactics was potentially irrelevant because there was evidence to suggest Alberternst could have been taken into custody without the use of force. For example, we noted above there was evidence Alberternst stuck his hands out into the hallway from the bathroom so the officers could handcuff him. Thus, the jury could have reasonably concluded no use of force was necessary in which case Clay's testimony would be irrelevant.

---

[2] We note the State argues Defendant did not preserve this matter because after the State's objection to the testimony was sustained, Defendant made an inadequate offer of proof. Thus, the State contends review should be for plain error only. However, after examining the record, we conclude the offer of proof was adequate and we review for abuse of discretion.

However, because the trial court allowed Clay to testify extensively, we will assume, for argument's sake, there was evidence that Alberternst resisted arrest and will address Defendant's argument regarding Clay's testimony. Defendant contends Clay's testimony was critical to the issue in Instruction 7, whether Defendant intended to injure Alberternst or to merely subdue him. However, Clay was permitted to testify he trained Defendant and taught him officers are permitted to use one level of force higher than that used by a person resisting arrest. Clay also testified "passive resistance" warranted hard, empty-hand control, including strikes. In addition, Clay testified officers can strike as hard as they can and can continue to hit as long as the resistive behavior continues. Clay also testified such strikes were permissible when a suspect would not allow himself to be handcuffed, and he stated hard empty hand control is at the lower end of the force spectrum. Further, Clay confirmed officers are trained to strike nerve motor points, including, among others, the shoulders near the base of the neck. Clay even demonstrated on a dummy where he trains officers to strike with these control techniques.

Thus, the above testimony demonstrates Defendant's training on how to apply control strikes. Further, Clay's testimony corroborated Defendant's testimonial evidence of how he subdued Alberternst. In light of Clay's extensive testimony that was admitted by the trial court, we conclude the excluded evidence, which would have only included Clay's testimony that injuries depicted on the photographs were consistent with the proper use of control strikes, was not prejudicial to Defendant. Clay's testimony regarding the injuries depicted in the pictures would have been cumulative to his testimony, which already indicated where a suspect may be struck as well as testimony about where Defendant struck Alberternst.

Therefore, the trial court did not prejudicially err in sustaining the State's objection to Brian Clay's testimony. Point denied.

## V. Conclusion

In conclusion, we reverse Defendant's convictions for first-degree burglary and property damage and remand for a new trial before a properly instructed jury. We affirm Defendant's conviction of third degree assault. Lastly, we dismiss Defendant's second point as moot and deny Defendant's seventh point.

ROBERT G. DOWD, JR.

Lawrence E. Mooney, P.J. and
Sherri B. Sullivan, J., concur.

23