**STATE of Missouri, Plaintiff–Respondent,**

v.

**Randall Scott LUDEMANN, Defendant–Appellant.**

**No. SD 31652.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 26, 2012.

Emmett D. Queener, Columbia, MO, for Appellant.

Gregory L. Barnes, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

Randall Scott Ludemann ("Defendant") appeals his conviction after a jury trial of possession of a firearm by a felon (*see* section 571.070.1(1)[1]), for which he received a suspended, six-year sentence. In his sole point on appeal, Defendant claims the evidence was insufficient to prove that he had actual possession of "or that he had access to or the ability to exercise control over the [firearm]." Finding no merit in the claim, we affirm.

## Applicable Principles of Review

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). We view the evidence and the reasonable inferences drawn from it "in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.*

An appellate court does not reweigh the evidence. *State v. Breedlove*, 348 S.W.3d 810, 814 (Mo.App. S.D.2011). "The reliability, credibility, and weight of witness testimony are for the fact-finder to determine. It is within the fact-finder's province to believe all, some, or none of the witness' testimony in arriving at its decision." *State v. Cannafax*, 344 S.W.3d 279, 284 (Mo.App. S.D.2011) (internal citation omitted).

## Facts

The evidence adduced at trial, as viewed in the light most favorable to the verdict, was as follows. In 2009, Defendant resided in a rock house just outside Osceola that he rented from John Wedgeworth. Wedgeworth resided in a "doublewide" mobile home situated about 150 to 200 yards from Defendant's rock house. On March 19, 2009, authorities executed a search warrant at the rock house. No one was home, so the officers forced entry into the home. At the time of the search, Defendant had been previously convicted of at least one felony.[2]

One of the items the officers observed was a locked gun safe. While the officers were searching the house, Wedgeworth arrived. Wedgeworth told officer Lee Hilty[3] that Defendant kept the combination to the safe in the house on a wall on "a small slip of paper[.]" Wedgeworth thought the paper with the combination might be located "behind the door[,]" but the officers

---

1. All statutory references are to RSMo. Cum. Supp.2009.

2. Defendant testified that he did not know how many felony convictions he had, but he estimated that it was "seven or eight."

3. Officer Hilty was "[e]mployed [by] the Henry County Sheriff's Office [and] assigned to the ATF [Bureau of Alcohol, Tobacco and Firearms] out of Kansas City."

could not locate it.[4] Wedgeworth said, "I know it was here 'cause we just used it recently." Wedgeworth, saying he also had the combination at his house, retrieved it and provided it to the officers. When the police opened the safe, they found what purported to be a "3-dollar bill" and a derringer pistol with six rounds of ammunition.[5] Other items officers located inside the house included pieces of mail addressed to Defendant, a recent traffic ticket issued to Defendant, items of men's clothing, and photographs of Defendant. The kitchen had food in it, and there were dishes in the sink.

After the search of the rock house was completed, Officer Hilty interviewed Wedgeworth inside Wedgeworth's mobile home. The officer observed that Wedgeworth's residence was "very dirty[,]" with "a layer of [pet] hair and dirt on everything[,]" including the table and chairs on which Wedgeworth and the officer sat. In contrast, the only dirt-free portion of the room was a wall "lined with long guns, and there were boxes with handguns in [th]em." The "guns were very pristine as far as they were very clean. They had no dirt on them, no dust on them. Everything else in that room did." Wedgeworth first told Officer Hilty that he got the firearms from the gun safe in Defendant's rock house "a couple months ago." He subsequently said that he "got [th]em out of there a month ago." It did not appear to Officer Hilty that the firearms had been in the mobile home for even one month because of their clean condition. Wedgeworth told Officer Hilty that he did not have any firearms inside the rock house.

At trial, Wedgeworth testified that he had not been in the rock house for "[p]robably a year or better" before the officers searched it. He told the jurors that he did not go to the rock house "too much" because of the combination of its steps and the fact that he "had a bad foot." Wedgeworth said he was not involved in retrieving the guns that lined the wall of his mobile home. According to Wedgeworth, a neighbor took the guns out of the rock house, put them in Wedgeworth's pickup truck, and Defendant then drove them to Wedgeworth's mobile home, where the neighbor unloaded the guns and put them along the wall.

Defendant testified in his own defense. Defendant knew there were guns inside the rock house when he moved into it. Defendant said that about two or three years before the search warrant was executed, Wedgeworth placed the safe in the rock house and put guns in it. Defendant had seen the derringer and its box prior to his arrest. Defendant said that he had been involved in an altercation with an acquaintance around January 2009, and the man said that he was going to "call the Feds on [Defendant] and he was [going to] get the Sheriff on [Defendant.]" Defendant admitted that the threat to call the authorities was one of Defendant's reasons for moving the guns from the rock house to Wedgeworth's mobile home. Defendant said he "argued with [Wedgeworth] about it. [Wedgeworth] didn't want to move [th]em." Thereafter, Defendant drove the pickup truck to help his neighbor move the guns from the rock house to Wedgeworth's mobile home.

4.  Wedgeworth recanted the statement at trial, maintaining that he had "messed up" and "was mistaken" in thinking that Defendant might have kept a copy of the combination at the rock house.

5.  The derringer and ammunition were in an unlocked box that had been specially made to hold the gun. There was writing on the top of the box that said, "Carolyn. Happy 5th Anniversary. Love John."

## Analysis

A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and:

(1) Such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony[.]

Section 571.070.1. Defendant does not dispute that he was a convicted felon within the meaning of the statute when the derringer was seized. The question we must resolve is whether the jury was presented with sufficient evidence from which it could find, beyond a reasonable doubt, that Defendant had "possession" of the derringer as required by the statute.

■ "Possession" is defined in chapter 556 as

having actual or constructive possession of an object with knowledge of its presence. A person has actual possession if such person has the object on his or her person or within easy reach and convenient control. A person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may also be sole or joint. If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint[.]

Section 556.061(22). Possession of a prohibited object therefore has two distinct elements: (1) "conscious and intentional possession ... either actual or constructive"; and (2) "awareness of the presence and nature" of the item being possessed. *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992).[6] In the context of possessing a controlled substance, we have reasoned:

While actual possession alone may provide a reasonable inference of such knowledge, "constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance" and such facts are coupled with "access to and control over the premises where the substance was found."

*State v. Gonzalez*, 235 S.W.3d 20, 26 (Mo. App. S.D.2007) (quoting *Purlee*, 839 S.W.2d at 588).

■ Exclusive control of the premises where the item is found raises an inference of access and control, but joint control requires further evidence connecting the defendant with the item. *See Purlee*, 839 S.W.2d at 588. Examples of such additional evidence include incriminating statements or other acts showing a consciousness of guilt by the defendant, routine

6. *Purlee* involved a sufficiency of the evidence challenge to a conviction for possession of marijuana. 839 S.W.2d at 587. The parties point to no Missouri case involving the charge of possession of a firearm in violation of section 571.070 with circumstances substantially similar to those present in the instant case. *But cf. State v. Langdon*, 110 S.W.3d 807, 810, 814 (Mo. banc 2003) (evidence was sufficient for jury to infer that master bedroom was defendant's, and the stolen gun found in dresser drawer in the room was constructive-

ly possessed by the defendant as the drawer contained only men's clothing; case reversed on other grounds). Many of Missouri's reported cases discussing unlawful possession of an item, like *Purlee*, involve the possession of a controlled substance. We see no reason to use a different standard when the item being possessed is a firearm. To the extent the possession of controlled substance cases are factually similar, we rely on their analysis of the issue of possession.

access to the location of the item, commingling of the item with the defendant's personal effects, and the item being in plain view. *See State v. Millsap*, 244 S.W.3d 786, 789 (Mo.App. S.D.2008). "The totality of the circumstances is considered in determining whether sufficient additional incriminating circumstances have been proved." *State v. West*, 21 S.W.3d 59, 63 (Mo.App. W.D.2000); *see also State v. Glowczewski*, 168 S.W.3d 100, 105 (Mo. App. S.D.2005).

■ Here, the firearm was locked inside a gun safe located in Defendant's house, and Defendant was not home at the time of the search. At the time the searching officers located the derringer, it was not in Defendant's actual possession because it was not "within [his] easy reach and convenient control." Section 556.061(22). As a result, the issue is whether the evidence was sufficient to allow a reasonable juror to conclude beyond a reasonable doubt that Defendant had at least joint, constructive possession of the derringer.[7]

Defendant directs us to *West*, 21 S.W.3d at 66—a case involving drug evidence located inside a locked filing cabinet and a locked shed—in support of his assertion that "the evidence was insufficient to show an intent to possess or exercise control over the derringer." The defendant in *West* shared the property in joint tenancy with another individual, but the court ultimately concluded that although the State sufficiently proved that the defendant had knowledge of the presence and nature of the contraband, it was insufficient to prove that the defendant intended to exercise control over it. *Id.* at 63, 65. *West* does

not help Defendant because, in that case (among other things), "[t]he state provided no evidence that [defendant, a joint-tenant] had a key to the filing cabinet in the office or to the shed" where the drug evidence was located. *Id.* at 66.

Unlike the defendant in *West*, Defendant was the sole tenant of the rock house, and he had the equivalent of a key; he had access and control over the safe's contents because he had the combination that unlocked the safe. Wedgeworth told Officer Hilty that Defendant normally kept a copy of the combination on a slip of paper near the safe. When the officers could not locate it, Wedgeworth said, "I know it was here 'cause we just used it recently." The jury was not required to believe Wedgeworth's subsequent trial testimony that he had been mistaken about Defendant having the combination at the rock house. *See Cannafax*, 344 S.W.3d at 284. Because Wedgeworth denied any participation in moving the other guns from the rock house to his mobile home, the jury could reasonably infer that the neighbor who moved the guns got the combination to the safe from Defendant. This evidence was sufficient to allow a reasonable juror to find beyond a reasonable doubt that Defendant had access to the derringer in the safe and, at a minimum, exercised joint control over it. *See Purlee*, 839 S.W.2d at 587.

Defendant's point is denied, and the judgment of conviction and sentence is affirmed.

DANIEL E. SCOTT, P.J., and JEFFREY W. BATES, J., Concur.

---

7. Because proof of joint possession is sufficient, we do not need to determine whether the evidence was sufficient to prove that Defendant had exclusive control over the derringer in the safe.