**STATE of Missouri, Respondent,**

v.

**Jerry MCCAULEY, Appellant.**

**No. ED 104138**

Missouri Court of Appeals,
Eastern District,
DIVISION THREE.

Filed: May 16, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied June 22, 2017

Motion for Transfer to Supreme Court Denied October 5, 2017

---

Lisa M. Stroup, 1010 Market Street, Suite 1100, St. Louis, MO. 63101, for appellant.

Shaun J. Mackelprang, P.O. Box 899, Jefferson City, Mo. 65102, Timothy J. McDonald, Co-Counsel, 1114 N. Market Street, Rom 401, St. Louis, Mo. 65102, for respondent.

## OPINION

Angela T. Quigless, P.J.

This case involves consolidated cross appeals from the judgment of the Circuit Court of the City of St. Louis following a jury trial in a criminal case. Jerry McCauley ("McCauley") appeals the trial court's judgment convicting him of possession with intent to use drug paraphernalia and resisting a lawful detention, arguing there was insufficient evidence of knowledge and intent to support the jury's verdicts. The State of Missouri (the "State") appeals the trial court's judgment of acquittal notwithstanding the verdict on the charge of unlawful possession of a firearm by a felon, arguing there was sufficient evidence to support the jury's guilty verdict. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We review the evidence and all reasonable inferences drawn from the evidence "in the light most favorable to the jury's verdict." *State v. Hutson*, 487 S.W.3d 100, 109 (Mo. App. W.D. 2016). McCauley was charged with six counts, including: unlawful possession of a firearm by a felon, a class C felony in violation of Section

571.070 [1] (Count I); resisting a lawful detention, a class A misdemeanor in violation of Section 575.150 (Count III); and possession of drug paraphernalia, a class A misdemeanor in violation of Section 195.233 (Count VI).[2]

Detective Archie Shaw ("Det. Shaw") of the St. Louis Police Department received a tip from a confidential informant that McCauley was selling and storing narcotics at his girlfriend's apartment located at 4037A Olive St. (the "Apartment"). While surveilling the Apartment, Det. Shaw witnessed three events he suspected were drug transactions. First, Det. Shaw observed an individual knock on the door to the Apartment. McCauley opened the door to let him in; then two minutes later the individual left the Apartment and drove away. Second, another individual walked up to the Apartment. Again, McCauley opened the door and let him in. The individual was only in the Apartment for a few minutes then left. Third, Det. Shaw observed McCauley enter the Apartment, then come back out to meet an individual in the rear alley. The individual handed something to McCauley, McCauley handed something back, then the individual left. Based on his extensive experience investigating drug trafficking, Det. Shaw suspected drug activity.

Det. Shaw obtained a valid search warrant for the Apartment. Det. Shaw executed the warrant along with seven other police detectives, including Lyndon Cornell ("Det. Cornell") and Damon Willis ("Det. Willis"). Det. Cornell was watching the rear entrance to the Apartment. Det. Willis was watching the front entrance.

McCauley and another individual exited the rear entrance and walked toward the front of the Apartment. Det. Willis exited his vehicle and walked towards McCauley. Det. Willis was wearing a black vest that had the word "POLICE" written on the front and the back. When McCauley and the other individual saw Det. Willis, McCauley started running while the other individual stopped and put his hands over his head. Det. Willis yelled "Police, stop," then pursued McCauley on foot, eventually catching and handcuffing him. Det. Willis searched McCauley and found a set of keys to the Apartment and three cell phones. No drugs or weapons were found on McCauley.

The detectives informed McCauley they had a search warrant for the Apartment. McCauley denied that he lived there. However, Det. Shaw used McCauley's keys to open the front door. Det. Willis then detained McCauley while the other detectives searched the Apartment. The search revealed photos of McCauley and his girlfriend in the living room. In the kitchen drawer to the right of the stove there was a digital scale, a box of latex gloves, a hammer, scissors, a box of sandwich bags, and a box containing numerous small empty capsules. The scale, hammer, and scissors were all covered in a white powdery substance suspected to be heroin. Also in the drawer were three small bags containing large brown rocks suspected to be heroin. In the closed drawer on the opposite side of the stove, the detectives found a 9mm handgun concealed all the way in the back of the drawer. In the bedroom there was men's clothing in the closet where the detectives found another scale

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. McCauley was also charged with a second count of felony unlawful possession of a firearm by a felon (Count II) and two counts of felony possession of a controlled substance possession (Counts VI and V). However, the jury found McCauley not guilty of these charges and they are not at issue in this appeal.

and a box containing a green leafy substance suspected to be marijuana. The detectives also found $5,000 in cash in the dresser drawer. On top of the dresser in the bedroom, the detectives found mail addressed to McCauley at a different address, a prescription drug box with McCauley's name on it, and two doctor's appointment cards with future dates for McCauley. All the evidence was seized and packaged.

Forensic testing confirmed the three bags recovered from the kitchen contained heroin, and the box recovered from the bedroom closet contained marijuana. The 9mm handgun was tested for fingerprints and DNA. There were no identifiable fingerprints on the gun, and the only DNA belonged to someone other than McCauley.

The jury found McCauley guilty of three charges: Count I, unlawful possession of a firearm by a felon for the gun found in the kitchen; Count III, resisting a lawful detention; and Count VI, possession of drug paraphernalia for the scales.

McCauley filed a motion for judgment of acquittal arguing there was insufficient evidence to convict him of any of the charges. The court denied the motion as to Counts III and VI. However, the court granted the motion as to Count I, stating: "There was nothing in the evidence to connect Mr. McCauley with that weapon in question." The court further concluded: "The evidence of numerous hand to hand transactions and defendant going into and coming out of the premises is sufficient to support the verdict with regard to the scale. The Court does not believe the State proved defendant's constructive possession of the gun beyond a reasonable doubt." The court sentenced McCauley to two concurrent one-year sentences. This appeal follows.

## POINTS ON APPEAL

McCauley raises two points on appeal. The State raises one point in its cross appeal. In Point I, McCauley argues the trial court erred in accepting the jury's verdict convicting him of possession with intent to use drug paraphernalia because there was no evidence of McCauley's knowledge of, or dominion and control over, the scales, and no evidence of McCauley's intent to use the scales for the purpose of preparing or packaging a controlled substance. In Point II, McCauley argues the trial court erred in accepting the jury's verdict convicting him of resisting a lawful detention because there was insufficient evidence that McCauley knew or reasonably should have known he was being pursued by law enforcement when he exited the Apartment, and insufficient evidence that the purpose of the detention was to execute a search warrant. In Point III, the State argues the trial court erred in granting McCauley's motion for judgment of acquittal on Count I because there was sufficient evidence to support the jury's verdict finding McCauley guilty of possession of a firearm by a felon.

## DISCUSSION

The points raised by both McCauley and the State address the sufficiency of the evidence to support the jury's verdicts and are, therefore, governed by the same standard of review.

### Standard of Review

The standard of review for sufficiency of the evidence is the same whether the defendant appeals a guilty verdict or the State appeals a judgment of acquittal notwithstanding the jury's guilty verdict. *See State v. Magalif*, 131 S.W.3d 431, 434 (Mo. App. W.D. 2004). "Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror

could find the defendant guilty beyond a reasonable doubt." *Hutson*, 487 S.W.3d at 108; *see State v. Clark*, 490 S.W.3d 704, 707 (Mo. banc 2016). We view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the jury's verdict, disregarding any contrary evidence and inferences. *Hutson*, 487 S.W.3d at 108. However, this Court "may not supply missing evidence, or give the [state] the benefit of unreasonable, speculative or forced inferences." *Clark*, 490 S.W.3d at 707. This court "does not act as a 'super juror' with veto powers but gives great deference to the trier of fact." *Id.* We will not reweigh the evidence "the factfinder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case." *Id.*

### I. Sufficient Evidence of Possession of Drug Paraphernalia

In Point I, McCauley argues the trial court erred in accepting the jury's verdict convicting him of possession with intent to use drug paraphernalia because there was no evidence he had "knowledge of, or dominion and control over, the scales" and no evidence "of an intent to use the scales for the purpose of preparing or packaging a controlled substance." We disagree.

To convict McCauley of possession with intent to use drug paraphernalia the State was required to prove, beyond a reasonable doubt, that McCauley possessed a digital scale, was aware of its nature and presence, and possessed it with intent to use it for the purpose of preparing or packaging a controlled substance. RSMo § 195.233; *State v. Mickle*, 164 S.W.3d 33, 47 (Mo. App. W.D. 2005).

The rules for possession of drug paraphernalia are the same as for possession of a controlled substance. *Mickle*, 164 S.W.3d at 42. Possession of drug paraphernalia may be either actual or constructive.

*Id.* A defendant has constructive possession of drug paraphernalia where he or she "has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons." RSMo § 195.010(34). Where actual possession is not present, "constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *Clark*, 490 S.W.3d at 709. When the defendant has exclusive possession of the premises, this "raises an inference of possession and control" over the contraband found there. *Id.* However, when the defendant shares control over the premises, the State must produce further evidence specifically connecting the defendant to the contraband. *Id.* The mere fact that a defendant is "present on the premises" or is in "proximity" to where the contraband was found does not by itself make a submissible case. *Id.* "There must be some incriminating evidence implying that the defendant knew of the presence of the [contraband], and that the [contraband] were under his control." *Id.* (citations and quotations omitted).

Neither party disputes that the scale constituted drug paraphernalia or that McCauley was not in actual possession of the scale. The only issues are whether there was sufficient evidence concerning the second and third elements of the offense: McCauley's constructive possession of the scale and McCauley's intent to use the scale for the purpose of preparing or packaging a controlled substance. Because McCauley did not have "exclusive possession over the premises," evidence that McCauley was present in the Apartment or that he was in proximity to the digital scale, without more, was insufficient to prove constructive possession. *Id.* Therefore, the State was required to prove

some additional incriminating evidence implying that McCauley knew of the presence of the scales, and that they were under his control. *Id.*

At trial, the State presented the following evidence. McCauley not only had access to the Apartment, but he was also selling drugs out of it. When McCauley was arrested, he was observed leaving the Apartment and had keys to the front door in his pocket. Det. Shaw observed McCauley letting individuals into the apartment who left after a few minutes. Det. Shaw also observed, McCauley meet an individual in an alley behind the Apartment and engage in a "hand-to-hand transaction." Det. Shaw, based on his experience investigating drug trafficking, suspected drug activity. When the detectives approached to execute the search warrant, McCauley ran. Upon searching the Apartment, the detectives found a digital scale in a kitchen drawer that also contained three bags of heroin, a hammer, scissors, gloves, small bags, and small empty capsules. Det. Shaw testified that these items are used in the preparation and packaging of controlled substances, stating: "That's the way they cut [heroin] up. You got your hammer, your smash it up. You got your scissors, you're cutting the chunks using that. Your gloves so you won't get it on you. Buttons (small capsules), they button it up right then and there."

We find this was sufficient evidence from which a reasonable juror could find McCauley had constructive possession over the scales and that he intended to use the scales for the purpose of preparing or packaging a controlled substance. "Both possession and intent can be proven by circumstantial evidence." *State v. Wood,* 301 S.W.3d 578, 583 (Mo. App. S.D. 2010). Based on the evidence that McCauley had access to the Apartment, had keys to the apartment in his possession, and was con-

ducting drug transactions both inside and outside of the Apartment, it was reasonable for the jury to infer that McCauley had constructive possession over the digital scale in the kitchen. *State v. Phillips,* 477 S.W.3d 176, 180 (Mo. App. E.D. 2015). In addition, the facts that the scale was found with heroin and items commonly used in the preparation and packaging of drugs, and these items were covered in a "white powdery substance," was sufficient evidence for a reasonable jury to infer McCauley intended to use the scale for the purpose of preparing and packaging a controlled substance. *See Mickle,* 164 S.W.3d at 51.

McCauley contends the evidence only establishes McCauley had regular access to the premises where the scales were found, and that this is insufficient to prove constructive possession, relying on *State v. Withrow.* 8 S.W.3d 75, 80 (Mo. banc 1999) (overruled in part on other grounds by *State v. Claycomb,* 470 S.W.3d 358, 361-62 (Mo. banc 2015) (holding unpreserved claims challenging sufficiency of the evidence are reviewed on the merits, not as plain error)). We find *Withrow* is distinguishable. In that case, the defendant was charged with attempting to manufacture methamphetamine. *Withrow,* 8 S.W.3d at 77-78. The defendant was present on the premises while methamphetamine was being manufactured in a closet behind a locked door. *Id.* The court held there was no evidence beyond the defendant's presence that connected him to the charge. *Id.* Like the defendant in *Withrow,* McCauley shared access to the Apartment. However, unlike in *Withrow,* McCauley was actually observed engaging in drug activity in and around the Apartment. This was sufficient evidence to allow the jury to infer McCauley knew about the drug paraphernalia in the Apartment and was exercising control

over those items. See *Phillips*, 477 S.W.3d at 180.

▇ McCauley also contends that "the jury's conclusion that Mr. McCauley was guilty of using the scales to package and prepare drugs but was not guilty of possessing the actual drugs is not the verdict of a reasonable jury." We disagree. "Juries frequently convict on some counts and acquit on others, not because they are unconvinced of guilt but simply because of compassion and compromise." *State v. Owens*, 270 S.W.3d 533, 539-40 (Mo. App. W.D. 2008); *State v. Urhahn*, 621 S.W.2d 928, 934-35 (Mo. App. E.D. 1981); *see also State v. McCall*, 602 S.W.2d 702, 708 (Mo. App. E.D. 1980). McCauley's argument ignores the well-settled rule that "inconsistencies between verdicts on multiple counts in a criminal prosecution are not grounds for rejecting the individual verdicts; rather, the sufficiency of the evidence on each count is considered independently of the others." *Owens*, 270 S.W.3d at 539-40.

We find sufficient evidence existed from which a reasonable jury could find McCauley guilty beyond a reasonable doubt of possession of drug paraphernalia. Therefore, the trial court did not err in denying McCauley's motion for judgment of acquittal as to Count VI. Point I is denied.

## II. Sufficient Evidence of Resisting a Lawful Detention

▇ In Point II, McCauley argues the trial court erred in accepting the jury's verdict convicting him of resisting a lawful detention because there was insufficient evidence that McCauley knew or reasonably should have known that he was being pursued by law enforcement when he exited the Apartment and that the purpose of the detention was to execute a search warrant. We disagree.

To convict a defendant of the misdemeanor offense of resisting a lawful deten-

tion in violation of Section 575.150.1, the State must prove three elements beyond a reasonable doubt:

(1) that the defendant knew or reasonably should have known that a law enforcement officer was making an arrest or attempting to lawfully detain or stop him; (2) that he resisted this arrest, stop or detention by fleeing from that officer; and (3) that he did so for the purpose of preventing the officer from effecting the arrest, stop or detention.

*State v. Jones*, 479 S.W.3d 100, 109 (Mo. banc 2016); RSMo § 575.150.1.

We find there was sufficient evidence for the jury to find McCauley guilty beyond a reasonable doubt of each element of resisting a lawful detention. When Det. Willis attempted to detain McCauley, he was wearing a black vest that said "POLICE" on the front and back. McCauley "took off running" immediately after he looked in Det. Willis's direction. This is sufficient evidence that McCauley knew or should have known Det. Willis was a police officer. *See State v. Gibbs*, 224 S.W.3d 126, 137 (Mo. App. W.D. 2007) (where officer could see the defendant, this was circumstantial evidence that defendant could see the officer and his police uniform). In addition, once Det. Willis shouted "Police, stop," McCauley knew or should have known Det. Willis was attempting to detain him. *See State v. Randle*, 456 S.W.3d 535, 542 (Mo. App. E.D. 2015) (defendant continued running in the opposite direction after the police ordered defendant to stop). Finally, McCauley continued to run after Det. Willis gave chase until he was caught and handcuffed. This evidence supports that McCauley resisted detention and that he did so for the purpose of preventing the officer from effecting the detention. *Id.* "Direct proof of a required mental state is seldom available and such intent is usually inferred from circumstantial evidence." *Id.*

at 539. Accordingly, there was sufficient evidence proving all the elements of the offense of resisting a lawful detention.

■ McCauley contends there was insufficient evidence that he "knew the purpose of the detention was to execute a search warrant." However, a defendant's knowledge of the basis for his detention is not an element of the offense of resisting a lawful detention. *See Jones*, 479 S.W.3d at 110; *see also State v. Williams*, 303 S.W.3d 634, 636 (Mo. App. E.D. 2010) ("[I]n prosecuting the charge of resisting a lawful detention, it was not necessary for the State to show that [defendant] was detained for any particular crime."). Therefore we need not determine whether there was sufficient evidence that McCauley knew he was being detained for the purpose of executing a search warrant. Under both the statute and the applicable law, the only knowledge required is that defendant "knew or reasonably should have known that a law enforcement officer is making an arrest or attempting to lawfully detain him." RSMo § 575.150.1; *see Jones*, 479 S.W.3d at 109.

■ We acknowledge that the jury instruction required the jury to find McCauley "knew or reasonably should have known of the basis for the detention."[3] However, whether or not McCauley knew this fact is of no consequence because it is not a fact the State was required to prove.[4] *See id.* A defendant's due process rights are violated "when an instruction relieves the state of its burden to prove the existence of every essential element of the crime," not when it requires the state to prove facts above and beyond that required by the statute. *See State v. Stover*, 388 S.W.3d 138, 153-54 (Mo. banc 2012); *see also Hutson*, 487 S.W.3d at 109 ("The reviewing court reviews a sufficiency of the evidence claim not based on how the jury was instructed but upon how the crime was charged.") (citing *State v. Zetina–Torres*, 482 S.W.3d 801, 809 (Mo. banc 2016)). McCauley suffered no prejudice from an instruction requiring the State to prove an additional fact beyond that required by statute.

Moreover, even if the State was required to prove this fact, we find there was sufficient evidence. A defendant's knowledge may be proven by "circumstantial evidence and reasonable inferences drawn from the circumstances surrounding the event." *State v. Hopson*, 168 S.W.3d 557, 562-63 (Mo. App. E.D. 2005). The jury was entitled to consider what McCauley knew and what McCauley had done when deciding whether McCauley had reason to know why Det. Willis was attempting to detain him. *See Jones*, 479 S.W.3d at 110-111. McCauley knew there was drug paraphernalia in the Apartment. McCauley also knew he was engaging in drug activity in and around the Apartment. Based on this, it would have been reasonable for the jury to infer that McCauley knew or reasonably should have known of the basis for his detention.

---

3. The court's jury instruction was an accurate and unmodified version of MAI-CR 3d 329.61.

4. The directions on "How to Use This Book" in MAI-CR 3d provide:
    The instructions in this book must be used for all trials occurring on or after January 1, 1987, *provided that the instruction reflects the substantive law concerning the offense.* The instruction must reflect the substantive law concerning the offense in effect as of the time of the commission of the offense. For crimes occurring after January 1, 1987, *care also must be taken to insure that no change by statute or court decision has been made that requires that the instruction be modified or not used.*
    MAI-CR 3d (revised Jan. 1, 2011) (emphasis added).

Therefore, sufficient evidence existed from which a reasonable jury could find McCauley guilty beyond a reasonable doubt of resisting a lawful detention. The trial court did not err in denying McCauley's motion for judgment of acquittal. Point II is denied.

### III. Insufficient Evidence of Unlawful Possession of a Firearm by a Felon

In Point III, the State argues the trial court erred in granting McCauley's motion for judgment of acquittal as to Count I because there was sufficient evidence to support the jury's verdict finding McCauley guilty of possession of a firearm by a felon. We disagree.

To convict a defendant of unlawful possession of a firearm by a felon, in violation of Section 571.070, the State must prove beyond a reasonable doubt that the defendant knowingly had a firearm in his possession, and defendant has previously been convicted of a felony. RSMo § 571.070; *State v. Ludemann*, 386 S.W.3d 882, 885 (Mo. App. S.D. 2012). The rules for possession of a firearm are similar to the rules for possession of a controlled substance. *See Ludemann*, 386 S.W.3d at 885. Possession of a firearm may be either actual or constructive. *Id.* "A person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons." RSMo § 556.061(38). Where actual possession is not present, "constructive possession may be shown when other facts buttress an inference of defendant's knowledge of the presence of the [contraband]." *Ludemann*, 386 S.W.3d at 885 (citing *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992)).

When the defendant has exclusive possession of the premises, this "raises an inference of possession and control" over the contraband found there. *Ludemann*, 386 S.W.3d at 885-86. However, when the defendant shares control over the premises, the State must produce additional evidence specifically connecting the defendant to the contraband. *Id.* In evaluating whether the evidence of "[a]dditional incriminating circumstances" sufficiently supports an inference of knowledge and control, we look to the totality of the circumstances. *State v. Evans*, 410 S.W.3d 258, 264 (Mo. App. W.D. 2013).

There is no dispute that McCauley had previously been convicted of a felony, that the handgun concealed in the kitchen drawer met the definition of a firearm, and that McCauley was not in actual possession of the handgun. Therefore, the only question is whether McCauley was in constructive possession of the handgun. Because McCauley shared joint-control over the Apartment, the State had the burden to produce some "additional incriminating circumstance" connecting McCauley specifically to the handgun. *See id.*

At trial, the State presented the same evidence relating to possession of drug paraphernalia in attempt to prove McCauley was connected to the handgun. The State argued McCauley had keys to the Apartment, and was observed allowing individuals into the Apartment who left a few minutes later. Further, McCauley was observed engaging in suspected drug activity and he fled when he saw the police a few days later. Upon executing a search warrant, detectives found heroin and drug paraphernalia in a kitchen drawer to the right of the stove. In a drawer on the opposite side of the stove, a handgun was found concealed all the way in the back of the drawer. A search of the bedroom revealed more drugs and drug paraphernalia as well as mail addressed to McCauley at a different address, a prescription drug box with McCauley's name on it, and two doc-

tor's appointment cards with future dates for McCauley.

The State asserted that McCauley's presence at the apartment and the fact that he was engaged in drug activity is proof that he constructively possessed the handgun. Based on this evidence, the trial court granted McCauley's motion for judgment of acquittal notwithstanding the verdict. The court found none of the evidence presented connected McCauley to the handgun concealed in the drawer. On appeal, the State still fails to identify any "additional incriminating circumstance" specifically connecting McCauley to the handgun. Instead the State argued "the same 'totality of the circumstances' review applies with respect to the possession of the firearm that applied to the possession of the drug paraphernalia." The State reasons, because there is sufficient evidence connecting McCauley to the drug paraphernalia, the same evidence is sufficient to prove McCauley constructively possessed the handgun concealed in a different kitchen drawer located in the same room. We agree with the trial court.

We find evidence connecting McCauley to the drug paraphernalia, without more, was insufficient to support an inference that McCauley was also in constructive possession of the concealed handgun because the handgun was not located in the same drawer as the drugs and the paraphernalia. There was no other evidence of "additional incriminating circumstances" supporting an inference of knowledge and control over the handgun. *See id.* There was no evidence McCauley had a gun. When McCauley was detained, no weapon was found in his possession. McCauley had access to the Apartment, but there was no evidence presented that he knew the handgun was concealed in the back of the drawer. Access to the Apartment does not alone support a reasonable inference that

McCauley had knowledge and control of the handgun. *See id.* Further, McCauley's personal belongings were not comingled with the handgun or found in close proximity to the drawer where the handgun was located. *See id.*

"Evidence of suspicious circumstances are insufficient to meet the State's burden to adduce additional evidence tying a defendant to contraband in a joint possession case." *State v. Koch,* 454 S.W.3d 370, 375 (Mo. App. S.D. 2015). There must be some connection between the incriminating circumstances and the contraband the defendant is charged with constructively possessing. *Id.* Because the incriminating evidence in this case failed to connect McCauley to the handgun specifically, any inference that McCauley was in constructive possession of the handgun would be speculative. *See Clark,* 490 S.W.3d at 707 (reviewing court must accept all *reasonable* inferences, but "may not supply missing evidence, or give the [state] the benefit of unreasonable, speculative or forced inferences").

We recognize that McCauley fled from the police, which demonstrates "consciousness of guilt." *See Evans,* 410 S.W.3d at 264. However, "[f]light does not establish a defendant's guilty knowledge of a particular crime in comparison to other possible charges and is alone insufficient to support a conviction." *Koch,* 454 S.W.3d at 377; *see State v. Franco-Amador,* 83 S.W.3d 555, 558-59 (Mo. App. W.D. 2002). Flight is not probative of guilt when such an inference is not "consistent with the totality of the circumstances." *State v. Moses,* 265 S.W.3d 863, 866 (Mo. App. E.D. 2008). Here, McCauley fled from the police while he was outside the Apartment, where he had been observed selling drugs several days earlier. The totality of the circumstance presented supports an inference that McCauley fled from the police to avoid being arrested for drug activity. As

discussed *supra*, this inference is sufficient evidence to connect McCauley to possession of the drug-related paraphernalia inside the Apartment. However, such evidence is not sufficient to infer McCauley's flight was consciousness of guilt of everything else in his girlfriend's Apartment, including the handgun, because this would not be "consistent with the totality of the circumstances." *See Moses*, 265 S.W.3d at 866.

Moreover, we do not find the State's reliance on *State v. Taylor* persuasive. 407 S.W.3d 153, 158 (Mo. App. E.D. 2013). The State contends the evidence was sufficient because there is a "well-established connection between firearms and controlled substances," citing *Taylor*. *See id.* However, the State mischaracterizes the court's holding in *Taylor*, which was that "evidence that a firearm is found under a jacket was admissible" because "it was logically and legally relevant towards demonstrating that Defendant 'constructively' possessed the heroin found inside the jacket." *Id.* at 158. *Taylor* is distinguishable because it concerned the admissibility of evidence, whereas this case concerns the sufficiency of evidence. *Taylor*, 407 S.W.3d at 158. In *Taylor*, the defendant was the only person in the home when the police executed a search warrant and found the defendant in the living room near a jacket on the couch. *Id.* at 156-57. The police found narcotics in a pocket of the jacket and a handgun under the jacket. *Id.* Defendant was charged with possession of a controlled substance. *Id.* The court held that the handgun was admissible to provide a more complete picture of the circumstances and was relevant in showing the defendant possessed the narcotics. *Id.* at 158.

The court in *Taylor* did not conclude that possession of a firearm was sufficient to prove possession of a controlled substance. The precise issue in *Taylor* was whether *direct* evidence that a defendant *actually* and "contemporaneous[ly]" possessed a *firearm* was *relevant* to prove a defendant constructively possessed a controlled substance. *Id.* Here, the issue is whether *circumstantial* evidence that a defendant *constructively* possessed drug *paraphernalia* is *sufficient* proof beyond a reasonable doubt that a defendant is also guilty of constructive possession of a firearm concealed in a drawer. The standard of review for determining whether evidence is admissible is not the same as the standard for determining whether admissible evidence is sufficient to prove a defendant's guilty beyond a reasonable doubt.

Therefore, we find the trial court did not err in granting McCauley's motion for judgment of acquittal notwithstanding the jury's guilty verdict on the charge of unlawful possession of a firearm by a felon. Point III is denied.

## CONCLUSION

We hold the trial court did not err in denying McCauley's motion for judgment of acquittal as to Counts III and VI because there was sufficient evidence from which a reasonable jury could find McCauley guilty of possession with intent to use drug paraphernalia and resisting a lawful detention. We further hold the trial court did not err in granting McCauley's motion for judgment of acquittal as to Count I because the State failed to prove beyond a reasonable doubt constructive possession of the handgun, therefore the evidence was insufficient for a reasonable jury to find McCauley guilty of possession of a firearm by a felon. The judgment of the trial court is affirmed.

Robert G. Dowd, Jr., J., and Lisa Van Amburg, J., Concur.