

# Missouri Court of Appeals

## Southern District

### In Division

| | |
|---|---|
| STATE OF MISSOURI, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| v. ) | Case No. SD37706 |
| ) | |
| DESMOND TYEZ GREER, ) | **FILED: September 22, 2023** |
| ) | |
| Appellant. ) | |

APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable David B. Pearson, Judge

**<u>AFFIRMED</u>**

Desmond Tyez Greer is a convicted felon and is prohibited from possessing a firearm. Following a traffic stop, an officer located a 9-millimeter Ruger handgun (the "firearm") under the driver's seat of a vehicle he was driving. A jury found him guilty of unlawful possession of a firearm, and the trial court sentenced Greer as a persistent offender to ten years' imprisonment to run consecutively to another sentence Greer was serving.[1] Greer appeals from that judgment in two points. In his first point, Greer argues there was insufficient evidence to show that he "consciously and intentionally

---

[1] *See* § 571.070. All statutory citations are to RSMo (2016) unless otherwise indicated. All rule references are to Missouri Court Rules (2023).

possessed a firearm" because "it was hidden under the seat of someone else's car, there were four other occupants in the car[,] including the owner of that car, and there were insufficient other facts to buttress an inference of [Greer's] knowledge of the gun's presence." In his second point, he argues the trial court plainly erred in allowing his hearing on his motion for new trial and sentencing to proceed without him being physically present in the courtroom. Finding no merit in either point, we affirm.

## Background

A police officer ("the officer") stopped Greer after noticing the vehicle Greer was driving displayed license plates registered to a different vehicle. Greer's girlfriend ("Girlfriend"), also a convicted felon, was in the passenger seat, and told the officer the vehicle belonged to her. Three juveniles, all related to Girlfriend, were in the backseat.[2] The officer could smell marijuana coming from the vehicle, so he conducted a probable cause search of it. When the officer asked if there was anything in the vehicle, Greer told him there was nothing in the vehicle.

During the search, the officer located a firearm under the driver's seat. The officer retrieved the firearm by pushing the seat and backrest forward, and then getting on his hands and knees and grabbing it. The firearm was positioned with the barrel facing towards the back seat and the magazine facing towards the center console. The officer testified "there's no way that that firearm could have gotten there other than someone that--with their right hand placing it under the seat." The firearm was more to the right-hand side underneath the seat, consistent with how a right-handed person would place it under the seat.

---

[2] The juveniles were identified as Girlfriend's siblings (ages 13 and 15) and Girlfriend's eight-year-old son who was sitting directly behind the driver.

Although Girlfriend told the officer the vehicle belonged to her, the vehicle was registered to her mother ("Girlfriend's mother"). According to Girlfriend's mother, the car belonged to Girlfriend, although the car had been registered under Girlfriend's mother's name. Greer and Girlfriend purchased the vehicle about four or five months before Greer's arrest.

Greer frequently drove the vehicle, and two weeks earlier, had been pulled over in the vehicle by police. Girlfriend's mother testified that while she assumed Girlfriend also drove the vehicle, she had never seen Girlfriend drive it and had only seen Greer drive it during the few months after they purchased the vehicle. Girlfriend's mother also testified she had heard Greer talk about having firearms. She testified the firearm located in the vehicle did not belong to her.

The jury found Greer guilty of unlawful possession of a firearm. During the hearing on his motion for new trial and sentencing, Greer appeared by video from the Department of Corrections. The record does not reflect that Greer waived his right to be personally present. However, Greer never objected to appearing virtually.

Defense counsel appeared in person on behalf of Greer, and argued:

> [DEFENSE COUNSEL]: And, Your Honor, [Greer] would be asking for anything concurrent. Originally, the State's offer was six years to serve concurrent; however, we're just asking for anything concurrent that you would deem fit. [Greer] set this and went to trial. It's his constitutional right to have a jury trial, and he wanted to hold that -- hold to that. Throughout the sentencing assessment report, [Greer] has maintained his innocence. And for these reasons, we would be asking for concurrent time to the sentence that he is serving as of right now in the Department of Corrections, as well as we would be asking for the time of when the warrant was served on him, for the time to be granted to him. Warrant was served on November 2, and if we are including today's date of the 25th of August, that would be 297 days.

The State, in response, argued Greer should receive the maximum sentence because of Greer's prior conviction for unlawful use of a weapon.  Additionally, the State asserted that "after the Sentencing Assessment Report was completed and submitted and [Greer] found out what was contained in that, he made threats against the probation officer that wrote the Sentencing Assessment Report."

The trial court then sentenced Greer to ten years' imprisonment, to run consecutively to an existing sentence, noting "this is not the first unlawful use of a weapon prior or conviction that [Greer] has."

## Discussion

### *Point 1:  Sufficiency of the Evidence*

"Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." ***State v. Lammers***, 479 S.W.3d 624, 632 (Mo. banc 2016).  "All evidence and inferences favorable to the State are accepted as true, and all evidence and inference[s] to the contrary are rejected." ***State v. Porter***, 439 S.W.3d 208, 211 (Mo. banc 2014).  However, we may not supply missing evidence, or give the State the benefit of unreasonable, speculative or forced inferences.  ***State v. Clark***, 490 S.W.3d 704, 707 (Mo. banc 2016).

To convict a defendant of unlawful possession of a firearm, in violation of section 571.070, the State must prove, beyond a reasonable doubt, that the defendant knowingly had a firearm in his possession, and the defendant has previously been convicted of a felony.[3] § 571.070 RSMo Cum. Supp. 2017; ***State v. McCauley***, 528 S.W.3d 421, 430

---

[3] Greer does not contest his status as a convicted felon.

4

(Mo. App. E.D. 2017). The rules for possession of a firearm are similar to the rules for possession of a controlled substance, and possession can be either actual or constructive. *McCauley*, 528 S.W.3d at 430. "Possess or possessed" means:

> [H]aving actual or constructive possession of an object with knowledge of its presence. *A person has actual possession if such person has the object on his or her person or within easy reach and convenient control.* A person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. *Possession may also be sole or joint.* If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint[.]

§ 556.061(38) (emphasis added). Thus, possession of a prohibited object has two distinct elements: (1) conscious and intentional possession, either actual or constructive; and (2) awareness of the presence and nature of the item being possessed. *State v. Bilskey*, 645 S.W.3d 717, 719 (Mo. App. S.D. 2022).

"In cases involving joint control of an automobile, a defendant is deemed to have both knowledge and control of items discovered within the automobile and, therefore, possession in the legal sense, *where there is additional evidence connecting [the defendant] with the items.*" *State v. Maldonado-Echieverra*, 398 S.W.3d 61, 65 (Mo. App. W.D. 2013) (quoting *State v. Woods*, 284 S.W.3d 630, 639 (Mo. App. W.D. 2009)) (emphasis added).

> Examples of such evidence include routine or superior access to areas where the controlled substance [or firearm] is kept, the presence of large quantities of the controlled substance, an admission by the accused, the accused being in close proximity to the controlled substance [or firearm] in plain view of law enforcement officers, commingling of the substance [or firearm] with the accused's personal belongings, or flight of the accused upon realizing the presence of law enforcement officers.

*State v. Kerns*, 389 S.W.3d 244, 247 (Mo. App. S.D. 2012). There is no precise formula for determining if evidence is sufficient to support a conviction of possession of

5

a prohibited object, and we look to the facts of each case in determining if the totality of the circumstances supports the finding of possession. *Id.* at 248. "[B]oth possession and knowledge may be proved by circumstantial evidence." ***State v. Brown***, 661 S.W.3d 27, 36 (Mo. App. S.D. 2023) (quoting ***State v. Welch***, 603 S.W.3d 745, 748 (Mo. App. S.D. 2020)) (internal quotation marks omitted).

Here, the State presented sufficient evidence connecting Greer to the firearm under the seat. First, the evidence showed Greer had routine and superior access to where the firearm was kept. Just two weeks before the traffic stop in this case, Greer was pulled over driving the vehicle. Girlfriend's mother also testified she had only seen Greer drive the vehicle—never Girlfriend. This evidence permitted the jury to infer that Greer consciously and intentionally possessed the firearm since it was located under the driver's seat—the seat he routinely occupied. "[S]uperior access to contraband that is accessible by two or more people is an incriminating fact."[4] ***State v. Glaze***, 611 S.W.3d 789, 797 (Mo. App. W.D. 2020) (quoting ***Buford***, 309 S.W.3d at 356). Second, Girlfriend's mother testified that Greer had talked about owning firearms in the past, making it reasonable for the jury to infer that the firearm found under Greer's seat was a firearm he owned. While none of this evidence in isolation is sufficient, the totality of the circumstances made it reasonable for the jury to find that Greer possessed the firearm.- Point 1 is denied.

---

[4] But we note that proximity to the contraband, alone, even as to a substance in plain sight, does *not* tend to prove ownership or possession as among several persons who share the premises. ***State v. Buford***, 309 S.W.3d 350, 356 (Mo. App. S.D. 2010).

*Point 2: Plain Error*

In point 2, Greer argues the trial court plainly erred in allowing the hearing on his motion for new trial and sentencing to proceed without him being physically present in the courtroom.[5] Greer acknowledges this issue has not been preserved and requests plain error review under Rule 30.20. Because Greer's claim fails to facially establish substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted, we decline review.

Plain error review is discretionary, and we will not review a claim for plain error "unless the claimed error facially establishes substantial grounds for believing that manifest injustice or [a] miscarriage of justice has resulted." **State v. Onyejiaka**, 671 S.W.3d 796, 798 (Mo. banc 2023) (quoting **State v. Brandolese**, 601 S.W.3d 519, 526 (Mo. banc 2020)). To establish manifest injustice or a miscarriage of justice, the defendant must show outcome-determinative error. **State v. Martin**, 661 S.W.3d 337, 340 (Mo. App. S.D. 2023). "Outcome determinative means that the error more likely than not altered the outcome of the trial." **State v. Daniel**, 573 S.W.3d 162, 165 (Mo. App. S.D. 2019).

In support of his argument, Greer directs us to **State v. Washington**, 249 S.W.3d 255 (Mo. App. W.D. 2008). There, the Western District of our Court found plain error where the trial court re-sentenced a defendant when the defendant was not personally present for the hearing, following a remand with an instruction to correct an error in sentencing. **Id.** at 256-57. We decline to follow **Washington** for two reasons.

---

[5] A defendant's right to be personally present at sentencing is reflected in Missouri statutory law and Missouri Court Rules. *See* § 546.550 and Rule 29.07(b)(2). "This [C]ourt has affirmed that 'a defendant has a due process right to be personally present at the time of sentencing and to be heard on the pronouncement.'" **State v. Hudson**, 607 S.W.3d 756, 758 (Mo. App. W.D. 2020) (quoting **State v. Washington**, 249 S.W.3d 255, 258 (Mo. App. W.D. 2008)).

First, in **Washington**, the defendant did not appear personally or virtually.  In our case, Greer had the opportunity to participate in the proceedings through video.  Second, we are unpersuaded by the **Washington** court's reasoning for why re-sentencing the defendant in his absence was a manifest injustice affecting substantial rights.  The **Washington** Court explained:

> It may be that the only purpose that will be served by further remand is compliance with the mandate and the provisions of state law.  If we were to agree with the State that we can re-construe or ignore the previous mandate, we would risk setting an unfortunate precedent.  We do not discern that it would be wise to treat casually the rights that became fixed on the issuance of the mandate simply because we now recognize that we could have handled it more efficiently the first time around.

*Id.* at 258.  It is true that we should not treat casually the rights of defendants.  But the **Washington** Court did not explain how the re-sentencing of the defendant without him being physically present altered the outcome of his sentence.  Under plain error review, the defendant must show an outcome determinative error to establish a manifest injustice or miscarriage of justice.  **Martin**, 661 S.W.3d at 340.

Greer's argument suffers from the same flaw.  While Greer may have received the maximum sentence, Greer does not demonstrate that it is more likely than not that he would have received a lighter sentence had he been physically present.  The trial court sentenced Greer to ten years' imprisonment because "this is not the first unlawful use of a weapon prior or conviction that [Greer] has."  Greer had an opportunity, both personally and through counsel, to argue for a lesser sentence.  Greer argues the transcript does not show he "uttered a single word during the entire proceeding, nor does it show that it was ever confirmed that he could hear or see what was going on, or that he could communicate with the court."  However, there is no indication in the record that Greer could *not* see, hear, or otherwise participate in the sentencing hearing.

8

It was Greer's burden to establish manifest injustice entitling him to plain error review. ***State v. Perry***, No. SD37678, 2023 WL 4732453, at *1 (Mo. App. S.D. July 25, 2023). Greer has failed to meet this burden.[6] Greer's claim fails to facially establish substantial grounds for believing that manifest injustice or a miscarriage of justice has resulted. Point 2 is denied.

## Conclusion

The trial court's judgment is affirmed.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

---

[6] We also note that Greer does not claim the evidence or arguments at sentencing would have been any different had he appeared in person.