

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,                )
                                  )
    Plaintiff-Respondent,         )
                                  )
v.                                )    No. SD38552
                                  )
AMANDA JOY ROGERS,                )    **Filed:  May 30, 2025**
                                  )
    Defendant-Appellant.          )

### APPEAL FROM THE CIRCUIT COURT OF POLK COUNTY

Honorable Michael O. Hendrickson

**<u>REVERSED</u>**

Amanda Joy Rogers ("Defendant") appeals her conviction of unlawful possession of a firearm by a felon (*see* section 571.070) after a Polk County jury found her guilty.[1] Because Defendant's claim that her conviction was not supported by sufficient evidence has merit, we reverse the conviction and direct the circuit court to enter a judgment of acquittal.

---

[1] Unless otherwise noted, all statutory citations are to RSMo Cum. Supp. 2020.  Defendant was originally also charged with drug possession, but that count was subsequently dismissed by the State and is not at issue in this appeal.

**Governing Law**

The elements of unlawful possession of a firearm are that a defendant knowingly had a firearm in her possession and had previously been convicted of a felony. Section 571.070.1(1). "Possession" in the law means

> having actual or constructive possession of an object with knowledge of its presence. A person has actual possession if such person has the object on his or her person or within easy reach and convenient control. *A person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may also be sole or joint.* If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint[.]

Section 556.061(38) (emphasis added). Thus, possession of a prohibited item involves two elements: (1) conscious and intentional possession, either actual or constructive; and (2) an awareness of the presence and nature of the object being possessed. ***State v. Greer***, 674 S.W.3d 827, 831 (Mo. App. S.D. 2023); ***State v. Bilskey***, 645 S.W.3d 717, 719 (Mo. App. S.D. 2022). Here, there is no dispute that Defendant had previously been convicted of a felony, and the gun at issue met the definition of a firearm. *See* section 571.010(8), RSMo 2016. The only contested element at issue in this appeal is whether Defendant was in actual or constructive possession of the firearm.

**The Evidence**

Viewed in the light most favorable to the verdict,[2] the evidence at trial was as follows. In May 2023, Leslie Best ("Informant") contacted the Missouri State Highway Patrol ("MSHP") to inform them that he believed he may have purchased a stolen gun from Brandon Maggard ("Seller"), a man he did not know. Informant reported that he

---

[2] *See **Greer***, 674 S.W.3d at 830.

grew concerned after the transaction when Seller told Informant that Seller was a felon and on probation. Informant also told MSHP that Seller was returning that evening to sell Informant another gun. Two troopers waited nearby for Seller to return, but when Seller did not arrive at the appointed time, the troopers departed.

After the troopers left, Seller, riding in the passenger seat of a black SUV, finally arrived and told Informant that he was late in coming because he "couldn't get a ride . . . and was trying to get one[.]" Defendant was driving the SUV. When Defendant and Seller arrived, Defendant exited the vehicle and sat in a chair behind the SUV, where she engaged in conversation with Informant's friend. Seller stayed in the passenger seat, and Informant leaned in the window to talk to Seller. Seller then pulled the gun out from under the passenger seat to show it to Informant. The gun at issue was a ".410/.45" pistol, which Informant said he liked because it was "rare[.]" Informant asked Seller for proof that he was the owner of the gun, but Seller was not able to provide it.

Defendant did not hold the gun or talk to Informant about the price of the gun, and she remained in her chair behind the SUV during the exchange between Seller and Informant. When Informant told Seller he could not buy the gun, Seller put the gun back under the passenger seat. Defendant then got into the driver's seat and they drove away. After they left, Informant contacted MSHP and gave a description of the vehicle, its occupants, and "where [he] believed the gun would be located in the vehicle[.]"

A MSHP trooper, Allison Enderle ("Trooper Enderle"), saw a vehicle and occupants that matched Informant's description traveling south on Highway 13. She pulled out directly behind the SUV and began following it. Trooper Enderle did not activate her emergency lights at that time. The SUV took the "very next exit" off of

Highway 13, turning west onto Highway 32. Trooper Enderle followed. After making one more turn (with Trooper Enderle still following), the SUV pulled into a residential driveway and stopped. The SUV was not exceeding the speed limit, and no traffic violations were alleged.

Trooper Enderle did not activate her emergency lights until the vehicle came to a stop.[3] The SUV stopped only "a little bit down" the long driveway, rather than pulling all the way up next to the house. As Trooper Enderle approached the SUV, Defendant opened her car door, stepped out, and walked toward Trooper Enderle, who found that conduct to be unusual. Trooper Enderle ran a records-check and learned that Defendant had a felony conviction.

Defendant told Trooper Enderle that she was coming from Halfway, which was suspicious to Trooper Enderle because she knew that Defendant had come from Humansville, and coming from Halfway would not have been "a direct route." Defendant also told Trooper Enderle that she had pulled into that particular driveway in order to visit the homeowners, but the homeowners did not come out to greet her. Defendant could not provide a reason as to why they did not come out. Defendant and Seller, who was still inside the SUV, both appeared to be agitated and nervous. When Trooper Enderle asked Defendant if there was a firearm in the SUV, Defendant said, "Not that I'm aware of." Trooper Enderle said that response was suspicious because "somebody normally answers yes or no."

Trooper Enderle and another trooper who had arrived on scene then searched Defendant's SUV and found ".410 ammunition" on the "driver's side" of the vehicle.

---

[3] Trooper Enderle testified that she did not activate her lights before then because she knew there was a gun in the vehicle and she was waiting until she had backup.

4

The gun at issue was located behind the front seats "in a bucket behind the center console on the floor." Trooper Enderle testified that you could not see the firearm in the bucket just by looking at it because other items in the bucket were covering the firearm.

**Analysis**

Defendant's point on appeal claims the State "failed to present sufficient evidence that [she] possessed the gun by exercising dominion or control over it[.]" We agree.

> "Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." *State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016). "All evidence and inferences favorable to the State are accepted as true, and all evidence and inference[s] to the contrary are rejected." *State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014). However, we may not supply missing evidence, or give the State the benefit of unreasonable, speculative or forced inferences. *State v. Clark*, 490 S.W.3d 704, 707 (Mo. banc 2016).

*Greer*, 674 S.W.3d at 830.

In this case, the gun was found in a bucket that was directly behind the vehicle's center console.[4] Because the State alleges that Defendant and Seller had joint control of the firearm,[5] the State was required to produce evidence beyond nervousness to prove that Defendant "possessed" the gun. "In cases involving joint control of an automobile, a defendant is deemed to have both knowledge and control of items discovered within the automobile and, therefore, possession in the legal sense, *where there is additional*

---

[4] While this specific issue was not directly addressed at trial, Trooper Enderle's testimony was that the firearm was within easy reach of the passenger seat where Seller was sitting. Given that the bucket was directly behind the center console, and within easy reach of the passenger seat, a logical inference from that evidence is that the firearm was also within reach of the person in the driver's seat.

[5] As noted in **State v. Buford**, our cases seem to blend the concepts of actual and constructive possession when there are multiple occupants inside a vehicle, "presumably because a sole individual may easily be seen as actually possessing an item located next to him while actual possession might not exist when the item is located within the reach of two or more individuals." 309 S.W.3d 350, 354 n.5 (Mo. App. S.D. 2010). In any case, constructive possession is the minimum level of possession necessary to sustain a conviction, so we review the evidence under that standard. **Id.**

5

*evidence connecting* [*the defendant*] *with the items.*" **State v. Maldonado-Echieverra**, 398 S.W.3d 61, 65 (Mo. App. W.D. 2013) (quoting **State v. Woods**, 284 S.W.3d 630, 639-40 (Mo. App. W.D. 2009)) (emphasis added).

While there is no precise formula for determining the amount of evidence that is sufficient to support a conviction for possession of a prohibited object, we look to the facts of each case to determine whether the totality of the evidence supports the conviction. *See* **Greer**, 674 S.W.3d at 831. In addition, "[m]any of Missouri's reported cases discussing unlawful possession of an item . . . involve the possession of a controlled substance." **State v. Ludemann**, 386 S.W.3d 882, 885 n.6 (Mo. App. S.D. 2012). Thus, we look to previous opinions that dealt with contraband within the reach of two or more persons without regard to whether those items were controlled substances or weapons.

Examples of additional evidence found to be sufficient to support a conviction include:

> [R]outine or superior access to areas where the [contraband] is kept, . . . an admission by the accused, the accused being in close proximity to the [contraband] in plain view of law enforcement officers, commingling of the [contraband] with the accused's personal belongings, or flight of the accused upon realizing the presence of law enforcement officers.

**State v. Kerns**, 389 S.W.3d 244, 247 (Mo. App. S.D. 2012).

We first note that none of these circumstances were present in this case. Defendant did not have superior or routine access to the area where the firearm was found. The firearm was found directly behind the center console, where it would have been equally accessible to Defendant or Seller. The firearm was also not in plain view when the SUV was stopped. Instead, it was concealed by other items in the bucket. Defendant did not make any admission as to having any control over the firearm, and no

6

evidence was adduced that Defendant's personal items were comingled with the gun in the bucket. Defendant did not flee from the troopers. Instead, she drove the speed limit and pulled into a driveway and stopped before any emergency lights were activated.

> "The mere fact that [the defendant] was present in the vehicle where the items were found is not sufficient to make a submissible case." [*State v.*] *Chavez*, 128 S.W.3d [569,] 574 [(Mo. App. W.D. 2004)]. "Nor does proximity to the contraband, alone, even as to a substance in plain sight, tend to prove ownership or possession as among several persons who share the premises." [*State v.*] *Bowyer*, 693 S.W.2d [845,] 847 [(Mo. App. W.D. 1985)].

*State v. Buford*, 309 S.W.3d 350, 356 (Mo. App. S.D. 2010).

The State argues that the evidence is sufficient because Defendant: (1) lied to law enforcement; (2) was nervous, agitated or distressed, despite having no other reason to be; (3) acted suspiciously; (4) was driving Seller around helping him to sell the gun; and (5) ammunition for the firearm was found "in the driver's-seat area, where Defendant was sitting."[6]

"Missouri cases have consistently held that nervousness alone is an insufficient 'additional incriminating circumstance' to sustain a conviction for possession of a controlled substance." *Id.* at 358 (internal citation omitted). Even if we assume that Defendant knew the gun was in the vehicle, "that fact does not yet prove that control of the [contraband] amounts to the conscious possession required for conviction." *Bowyer*, 693 S.W.2d at 849-50 (supporting citations omitted). The fact that Defendant was driving Seller around is not indicative that she intended to exercise dominion or control over the firearm. The evidence at trial was that Seller came alone to sell a firearm to

---

[6] The State also argues that Defendant "fled" from law enforcement by taking the first exit from the highway when Trooper Enderle began following the vehicle and then "pulling into a stranger's driveway." Defendant was not speeding or violating traffic laws, and she pulled over before Trooper Enderle turned on her emergency lights.

7

Informant the previous day, but Defendant drove Seller the next day. On that day, Seller and Informant discussed the sale of the firearm after Defendant had already exited the vehicle and was conversing with Informant's friend. Seller pulled the firearm out from under the passenger seat and showed it to Informant.

While Trooper Enderle testified that ammunition for the gun was found on the "driver's side of the vehicle[,]" there was no evidence that it would have been visible to Defendant. Further, to also assume that Defendant knew of the presence of the ammunition – not illicit in and of itself – does not prove that she had the power and intention to exercise dominion and control over the firearm that was concealed in the bucket. *See id.* at 849 (holding that a "roach clip" in plain sight in a jointly-occupied vehicle was not sufficient to convict the defendant of possession of marijuana).

In the absence of evidence that Defendant had the power and the intention at a given time to exercise dominion or control over the firearm, we conclude that the evidence adduced at trial was insufficient to allow a reasonable juror to find, beyond a reasonable doubt, that Defendant possessed the firearm in question.

The judgment in favor of the State is reversed, and the circuit court is directed to enter a judgment of acquittal.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JENNIFER R. GROWCOCK, C.J. – CONCURS