

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD35306
)
MARTIN AKEEM DANIEL, ) **Filed: April 30, 2019**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable Scott T. Horman, Associate Circuit Judge

## **AFFIRMED**

A jury found Martin Akeem Daniel ("Defendant") guilty of possession of more than five grams of marijuana with the intent to distribute, and of felony resisting arrest. The trial court sentenced Defendant as a prior and persistent offender to ten years and seven years for these offenses respectively with the sentences to run concurrently. Defendant appeals claiming in two points that the trial court (1) abused its discretion in admitting evidence of uncharged misconduct by Defendant, and (2) plainly erred in failing to grant Defendant allocution. We deny both points.

Relevant Testimony at Trial

The State called Detective John Blakely with the city of Sikeston as its first witness. Detective Blakely told the jury the following. In the evening on June 30, 2016, Detective Blakely went to a house in Sikeston "looking for a female by the name of Rhonda Franklin, and I was told that's where she had moved to. So I needed to go speak with her about a case I was following up on." As he and other officers walked up to the house, Ms. Franklin "came out" of the house. Defendant and his brother were inside the home. Detective Blakely patted-down Defendant's brother and Detective Penrod patted-down Defendant for officer safety. Detective Blakely observed Detective Penrod remove a clear "Ziploc Baggie" from Defendant's "back pocket" in the course of the pat-down. The baggie had "several" "smaller [b]aggies of marijuana" inside.

Later that evening and "close to midnight," Detective Blakely executed a search warrant at the house. In the course of the search, Detective Blakely located a set of scales, some baggies with the corners missing and identification belonging to Defendant. The identification was "found in the southwest bedroom." The baggies were found "in the trash inside" the house, and were the same type of baggie as those found with the marijuana in Defendant's pocket. Detective Blakely only found a few. The individual baggies in the large baggie that Detective Penrod removed from Defendant's back pocket were "all packaged for dime sacks or $10 bags of weed."

Narcotics detective Bobby Penrod then testified. Early in his direct testimony, the following exchange occurred:

Q. Detective, I want to ask, were you called to an address on West Gladys in Sikeston on June 30 of last year?

A. Yes.

2

Q. And what was that for?

A. Detective Blakely asked me to go with him for an investigation he was doing in reference to a burglary.

Q. Okay.

[Defense counsel]: Objection, Your Honor. May we approach?

THE COURT: You may.

(At this time counsel approached the bench, and the following proceedings were had:)

[Defense counsel]: That was covered in one of my pretrial motions.

. . . .

THE COURT: Any response to that, [prosecutor]?

[Prosecutor]: Judge, he never implicated the defendant being part of that investigation, and it can be very cleared up with one question, was he the suspect in a burglary. The answer is no.

THE COURT: I'm going to overrule the objection. You need to clean that up with that question.

(Proceedings returned to open court.)

BY [prosecutor]:

Q. Detective, to be clear, the defendant was not at all part of the investigation for the burglary, correct?

A. At the time I was asked to go there, I knew -- Nobody was -- I didn't know who the suspects were, and I didn't really know why we was [sic] going there besides that.

Q. Okay. So you never wrote any reports about the defendant being involved in anything else, correct?

A. No.

Defendant did not object further, and Detective Penrod's testimony then shifted to the events that occurred when the officers first arrived at Ms. Franklin's house. There was further testimony from law enforcement regarding the marijuana baggies and scale, but nothing regarding the burglary investigation that brought the officers to the house that evening.

*Sentencing*

At sentencing on December 20, 2017, defense counsel acknowledged she had "gone over" the sentence assessment report with Defendant and suggested corrections to the report, and then presented argument on an appropriate sentence.

The trial court then imposed sentence stating:

> So what I'm going to do with regard to your case, [Defendant], allocution and sentence as to Count I, I am going to sentence you in this case to 10 years to serve in the Department of Corrections. As to Count II, I will impose an allocution and sentence of 7 years. That will be concurrent to Count I. And I will order these sentences to be executed.

**Analysis**

*Point I – Uncharged Misconduct*

In his first point, Defendant asserts that the trial court "abused its discretion in admitting Officer Penrod's testimony about the burglary investigation at Ms. Franklin's house, in violation of [Defendant's] rights to be tried only for the offense charged . . . ," "in that Officer Penrod's testimony of this uncharged criminal offense created an inference that [Defendant] was a possible suspect in the burglary investigation, this evidence was neither logically nor legally relevant to [Defendant's] charged offenses, and this evidence prejudiced [Defendant] by creating an impermissible inference that he had a propensity to commit serious criminal offenses." Defendant has not preserved the issue

4

raised in his first point. Defendant's motion for a new trial argues that the trial court erred "in failing to grant the defendant's request for a mistrial." The record shows that Defendant only made an objection to Detective Penrod's testimony, and did not request a mistrial. Further, Defendant did not request any specific relief based on the objection, and did not object further or request additional relief following the trial court's ruling and instruction to the prosecutor to clarify that Defendant was not a suspect in a burglary. As a result, it appears Defendant waived any claim of error for this issue on appeal. *State v. McMilian*, 295 S.W.3d 537, 539 n.2 (Mo.App. W.D. 2009).

*Point II – Allocution*

In his second point, Defendant argues that the trial court "plainly erred in failing to grant [Defendant] allocution before pronouncing sentence," "which resulted in a manifest injustice to [Defendant]." "['P]lain error can only serve as the basis for granting a new trial on direct appeal if the error was outcome determinative.[']" *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006) (quoting *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002))." *State v. Mendez-Ulloa*, 525 S.W.3d 585, 590, 595 (Mo.App. E.D. 2017). Outcome determinative means that the error more likely than not altered the outcome of the trial. *Deck v. State*, 68 S.W.3d 418, 426-27 & n.5 (Mo. banc 2002). Rule 29.07(b)(1), Missouri Court Rules (2018), provides:

> *Allocution and Imposition of Sentence.* Sentence shall be imposed without unreasonable delay. When the defendant appears for judgment and sentence, he must be informed by the court of the verdict or finding and asked whether he has any legal cause to show why judgment and sentence should not be pronounced against him; and if no sufficient cause be shown, the court shall render the proper judgment and pronounce sentence thereon. If the defendant has been heard on a motion for new trial, and in all cases of misdemeanor, the requirements of this subparagraph are directory and the omission to comply with them shall not invalidate the judgment or sentence.

5

Our Supreme Court also has acknowledged:

> "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." *Green [v. United States]*, 365 U.S. [301,] 304, 81 S.Ct. 653 [(1961)]. Eight members of the Supreme Court of the United States, in *Green*, agreed that Rule 32 of the Federal Rules of Criminal Procedure "requires a district judge before imposing sentence to afford every convicted defendant an opportunity personally to speak in his own behalf." *Hill v. United States*, 368 U.S. 424, 425–26, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). The Supreme Court held in *Hill*, however, that "[t]he failure of a trial court to ask a criminal defendant represented by an attorney whether he has anything to say before sentence is imposed . . . is an error which is neither jurisdictional nor constitutional." *Id*. at 428, 82 S.Ct. 468.

*State v. Taylor*, 466 S.W.3d 521, 533 (Mo. banc 2015) (footnotes omitted).

Assuming without deciding that the trial court erred in failing to ask Defendant if he had any legal cause why sentence should not be pronounced, Defendant does not point us to (or even allege) any legal cause why sentence should not have been pronounced or any mitigating evidence[1] that Defendant would have raised if given an opportunity (or that he would like to raise on remand for resentencing). As a result, we deny Defendant's second point because he fails to demonstrate any prejudice, much less a manifest injustice.

Defendant had the benefit of a sentence assessment report that contained information relevant to sentencing. Defense counsel advocated on Defendant's behalf for an appropriate sentence, was fully aware Defendant's motion for a new trial had been denied without a hearing before sentencing and chose not to request reconsideration of that motion. Defendant, however, fails to persuade us that the error resulted in prejudice

---

[1] Our Supreme Court has suggested that allocution also includes a defendant's right personally "to speak and to present mitigating evidence prior to sentencing." *State v. Taylor*, 466 S.W.3d 521, 534 (Mo. banc 2015); *see also* *State v. Thompson*, 538 S.W.3d 390, 395 n.6 (Mo.App. W.D. 2018).

to Defendant. At trial, defense counsel affirmatively requested that the trial court impose a sentence, and Defendant did not ask to present any legal cause or mitigating evidence to the trial court that was not included in his previously denied motion for a new trial, the sentence assessment report, or defense counsel's advocacy for an appropriate sentence. In this appeal, Defendant has not identified any legal cause why sentence should not have been pronounced or any mitigating evidence that Defendant would have raised if given an opportunity (or that he would like to raise on remand for resentencing). The trial court's error simply did not result in any demonstrable prejudice to Defendant or alter the outcome of Defendant's sentencing.

Point II is denied.

The trial court's judgment is affirmed.[2]

Nancy Steffen Rahmeyer, J. – Opinion Author

Don E. Burrell, P.J. – Concurs

Gary W. Lynch, J. – Concurs

---

[2] Defendant filed with us a motion to remand the case to the trial court to consider newly discovered evidence based on the findings of a master in an unrelated habeas corpus proceeding that Detective Blakely was not credible in that proceeding. There is no allegation that Detective Blakely testified falsely or otherwise engaged in wrongful conduct in this case. We took the motion with the appeal, and now deny the motion. The new evidence is "merely of an impeaching nature," and, in light of the uncontested evidence that Defendant had seven individual bags of marijuana on his person and fled from officers and the unanimous testimony of three police officers that the packaging and number of individual bags alone indicated an intent to distribute the marijuana, the new evidence is not "so material that it is likely to produce a differen[t] result at a new trial." *See* **State v. Terry**, 304 S.W.3d 105, 109, 109-11 (Mo. banc 2010) (mandatory elements that a movant must show to obtain a new trial on the basis of newly discovered evidence; newly discovered DNA evidence was not "merely of an impeaching nature" because it showed conclusively that the challenged witness committed perjury in the defendant's trial); **State v. Williams**, 504 S.W.3d 194, 197-98 (Mo.App. W.D. 2016) (allegedly newly discovered impeachment evidence insufficient to show manifest injustice necessary to support plain error review where the challenged witness neither recanted nor was shown conclusively to have committed perjury in the defendant's trial); and **State v. Nylon**, 311 S.W.3d 869, 877-78, 875 (Mo.App. E.D. 2010) (where the prosecution "was based entirely on the testimony" of two officers, newly discovered evidence that the prosecutor's office subsequently had "dropped" *other* criminal cases involving these two officers because of concerns about the officers' credibility was merely of an impeaching nature).