

# Missouri Court of Appeals
## Southern District

In Division

GREG ALAN MARVIN,                          )
                                           )
    Appellant,                         )     No. SD37704
                                           )
v.                                         )     **Filed:  October 6, 2023**
                                           )
STATE OF MISSOURI,                         )
                                           )
    Respondent.                        )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Judge

**<u>AFFIRMED</u>**

Greg Alan Marvin appeals from the judgment denying his Rule 29.15 motion for post-conviction relief after an evidentiary hearing.[1]  In a single point, Marvin argues the motion court plainly erred in failing to recuse after the motion court "prejudged [first trial counsel's] credibility based on him lying to the court on a previous occasion[.]"  Finding no merit in Marvin's argument, we affirm.

---

[1] All rule references are to Missouri Court Rules (2018).

## Background[2]

Following a jury trial, Marvin was convicted of the first-degree domestic assault of his ex-girlfriend ("Female Victim"), first-degree assault of Female Victim's friend ("Male Victim"), and armed criminal action. At trial the parties agreed Marvin shot Male Victim, but Marvin claimed he did so in self-defense.

The assaults, which occurred in a Bass Pro Shop parking lot, were captured on Bass Pro Shop security cameras and witnessed by a bystander, who called 911 to report the assaults. The surveillance footage "showed the . . . actual shooting and the assault[.]" State's Exhibits 62 and 63 contained all of the Bass Pro Shop surveillance footage. A detective took the Bass Pro Shop footage and made a compilation video which "showed the relevant portions of the incident all in one video[.]" The compilation video was admitted at trial as State's Exhibit 64. Exhibit 64 shows Marvin arriving at the parking lot at 11:05 p.m. He left his vehicle two minutes later, at 11:07 p.m. Marvin approached the victims from the south, then Male Victim turned and approached Marvin, and then six seconds later, Male Victim fell to the ground. Marvin left the victims at 11:15 p.m., about three minutes after he approached them.

The 911 calls made by the witness at Bass Pro Shop were also admitted into evidence. The witness can be heard trying to get Marvin to stop the assault and trying to lure Marvin away from the victims. The witness said, "911 Bass Pro Shop parking lot we just had a shooting, son of a bitch is kicking him in the head." The witness added, "He's dead. He'll make sure he's dead. Hurry up, get over here. Hey, I can't get too close, the fucker's got a gun. . . . Now he's got the woman." When the 911 operator asked how many people had been shot, the witness said,

> One guy is dead already. He beat the shit out of the woman. I can't get close because I don't have a gun. . . . There was a couple probably fooling around down here. Pickup. The girl's up now – looking at the dead guy. The motherfucker took him. Executed him. I watched it. . . . Motherfucker shot him in the fucking head! Bam bam bam. Sounded like a nine millimeter. Hey, the guy's still alive.

[2] Portions of this section are taken from our unpublished Order and Statement in ***State v. Marvin***, SD35438 (September 12, 2019), without further attribution.

2

His head moved.  He beat the shit out of her.  Her nose is bloody.  She's still alive.  Just barely.  Let's see, he's got, gut wound.  Yeah.

Female Victim can be heard pleading for help and saying that she could not see.  The witness comforted her:  "Yeah, okay.  Help's on the way ma'am.  Ma'am, help's on the way.  Okay.  I know you can't see.  Just lay there, the ambulance is on its way.  Just hold still.  You'll be okay."  The witness emphasized that Male Victim was only "barely" alive.

After the assaults, Marvin fled the scene.  His gun was located in a koi pond.  When interviewed by police, Marvin said he woke up in a jail cell and did not know what happened.

Marvin testified on his own behalf at trial.  According to Marvin, he never intended to hurt anyone and he shot Male Victim in self-defense.  After he shot Male Victim, Marvin "blacked out" and "came to" when Female Victim said "she couldn't see."  Marvin claimed that when he approached the victims in the parking lot, he "just wanted peace" but admitted he brought his gun with him.

The jury found Marvin guilty of first-degree domestic assault, first-degree assault, and armed criminal action.  Marvin appealed his convictions, which were affirmed by this Court.  Following our mandate, Marvin, through private counsel, timely filed a post-conviction motion[3] alleging, among other things, that trial counsel ("second trial counsel") was ineffective in failing to require the State to lay an appropriate foundation for the admission of the surveillance footage and failing to object to its admission because:

> The recording was prejudicial to [Marvin] in that it failed to include video recordings of the event taken from other angles that more clearly demonstrated that [Male Victim] was aggressively approaching [Marvin] at the time [Marvin] shot [Male Victim] in self-defense and further demonstrated that [Marvin] did not shoot or kick [Male Victim] after having struck [Female Victim] and that [Marvin] did not strike [Female Victim] the number of times [Female Victim] claimed that he struck her.  [Second trial counsel] either failed to obtain all of the raw footage of the video or failed to review the video to ascertain that there was video that more accurately portray[ed] the events.  Evidence will consist of the

---

[3] We have independently verified the timeliness of Marvin's motion for post-conviction relief.  *See **Moore v. State***, 458 S.W.3d 822, 825-26 (Mo. banc 2015); ***Dorris v. State***, 360 S.W.3d 260, 268 (Mo. banc 2012).

3

testimony of [second trial counsel], [first trial counsel], [Marvin], Custodians of security videos, security videos, DVD of video shown to the jury.

Marvin's motion also alleged the State failed to provide exculpatory evidence to him by failing to provide the Bass Pro Shop surveillance video footage showing different angles of the assault.

At the evidentiary hearing, both first trial counsel and second trial counsel testified. First trial counsel testified the State provided him with a video that contained multiple angles of the incident from the surveillance cameras. He claimed that he provided second trial counsel with the discovery, and directed his attention to a particular video. At the evidentiary hearing, Marvin played the surveillance footage that was entered into evidence at trial and first trial counsel claimed the video he had received showed the entire incident and included other angles. On cross examination, first trial counsel agreed that it had been six years since he had viewed the videos and he did not remember exactly what he had viewed. He also acknowledged he could not remember how many videos he actually received from the State or how many different camera angles there were on the videos.

Second trial counsel testified he "would have loved there to be a different video, a different angle. . . . But I just never saw one." He did not recall any conversation with first trial counsel where first trial counsel pointed out any specific exhibit. As to the videos that were admitted at trial, second trial counsel testified he stipulated to its admission because:

> it was going to be a simple witness, just essentially judicial economy. . . . I knew that the witness [for laying the foundation] was going to be available and that they would testify that it was working properly. So rather than drag the trial out and bore the jury, I thought it was best to stipulate. And that's what I advised [Marvin]. I'm sure we had a conversation about it.

Marvin agreed with the stipulation. Second trial counsel explained that he did not object to the compilation video, State's Exhibit 64, because once the original videos were admitted, the State was permitted to use those videos any way it wished; he thought an objection would be meritless and annoy the jury.

4

A prosecutor also testified at the evidentiary hearing. According to the prosecutor, the two angles admitted at trial were the only angles that Bass Pro Shop provided. Bass Pro Shop never provided the video that Marvin claims existed. Marvin testified the missing video showed Male Victim had "his fists in the air" and "had to walk a total of . . . close to about 15 feet to get to [Marvin]."

During Marvin's rebuttal argument at the close of the evidentiary hearing, the motion court questioned Marvin's private counsel about the existence of the video containing different angles:

THE COURT: I'm just saying there's no evidence that anything happened to one single disk that was produced to [first trial counsel].

[Private Counsel]: Well, there's evidence that there was a video that showed a different view --

THE COURT: If you believe --

[Private Counsel]: -- by [first trial counsel] to [second trial counsel] and [second trial counsel] --

THE COURT: If you believe [first trial counsel].

[Private Counsel]: If you believe [first trial counsel].

THE COURT: ***This [c]ourt is not inclined to believe [first trial counsel]. He's lied to this [c]ourt before so he has no credibility.***

[Private Counsel]: I understand that, Your Honor.

THE COURT: Now, if [second trial counsel] had said, "Yeah, I -- I think I saw the video but now I can't find it," that would be different. But why would [second trial counsel] give -- throw away or lose a valuable piece of evidence, as you say it is? Although, I still don't think it's a defense. But that -- that was up for the jury to decide.

[Private Counsel]: I -- I understand, Your Honor. My point is – [Marvin's] point is that, if the jury had seen that video, they would have been more convinced of the self-defense or less convinced that the State had met its burden to show that there was no self-defense.

THE COURT: I -- I don't agree with that. I sat on this trial. I watched it. Now, the only thing that the State could have done better was take that video, match it to the 911 call, and play them simultaneously; because that 911

5

call was -- what I call in baseball terms -- a play-by-play incident of what happened that night.

But we are where we are. I'll take it under advisement and then let you send out a decision soon.

(Emphasis added).

The motion court denied Marvin's claims, finding second trial counsel was not ineffective in failing to object to the surveillance footage because the appropriate foundation was laid for the surveillance videos and finding the prosecutor to be credible when he testified no other video existed.

## Discussion

Marvin claims the motion court plainly erred in failing to recuse because the motion court "prejudged [first trial counsel's] credibility based on him lying to the court on a previous occasion, and the motion court's failure to recuse resulted in manifest injustice because it held an actual bias and it was outcome determinative." Marvin acknowledges he did not object or move for recusal, and now requests plain error review. Normally, "there is no plain error review in appeals from post[-]conviction judgments for claims that were not presented in the post-conviction motion." ***Shockley v. State***, 579 S.W.3d 881, 899-900 (Mo. banc 2019) (quoting ***McLaughlin v. State***, 378 S.W.3d 328, 340 (Mo. banc 2012)). This is because the post-conviction relief rules, which expressly waive any claims for relief *known* to the movant that are not raised in the motion, conflict with the plain error rule, Rule 84.13, which grants this Court discretion, in some instances, to review errors that were not raised below. ***Hoskins v. State***, 329 S.W.3d 695, 699 (Mo. banc 2010). However, a claim of alleged judicial bias occurring *after* the filing of the post-conviction relief motion is not a claim that could be *known* to movant and raised in the motion for post-conviction relief. Thus, in this instance, there is no conflict between Rule 29.15's language and Rule 84.13's language.

Even though we may review Marvin's claim for plain error, we decline to do so. Plain error review is discretionary, and we will not review a claim for plain error "unless the claimed

6

error facially establishes substantial grounds for believing that manifest injustice or [a] miscarriage of justice has resulted." ***State v. Onyejiaka***, 671 S.W.3d 796, 798 (Mo. banc 2023) (quoting ***State v. Brandolese***, 601 S.W.3d 519, 526 (Mo. banc 2020)).  To establish manifest injustice or a miscarriage of justice, a defendant must show outcome-determinative error. ***State v. Martin***, 661 S.W.3d 337, 340 (Mo. App. S.D. 2023).  "Outcome determinative means that the error more likely than not altered the outcome of the trial." ***State v. Daniel***, 573 S.W.3d 162, 165 (Mo. App. S.D. 2019).

We presume a judge acts with honesty and integrity and will not preside in a trial in which the judge cannot be impartial. ***Anderson v. State***, 402 S.W.3d 86, 92 (Mo. banc 2013).  A post-conviction relief movant has the burden of showing bias or prejudice. ***Id.***  Rule 2-2.11(A) sets the standard for when a judge should recuse in a proceeding. ***Id.***  Under this rule, a judge must recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned.  Rule 2-2.11(A).

Marvin's claimed error—that the motion court should have recused because it allegedly prejudged first trial counsel's credibility—fails to facially establish substantial grounds for believing a manifest injustice or a miscarriage of justice has resulted.  The motion court's comment about first trial counsel's lack of credibility came *after* hearing the overwhelming evidence that there was no missing video.  This evidence included testimony by both second trial counsel and the prosecutor that no such video existed.  And even first trial counsel himself admitted he could be misremembering the video, that it had been six years since he viewed the videos, and that he did not remember how many videos the State gave him.  His own lack of confidence in his memory of what the videos showed was enough to undermine how much credence should be given to his testimony.  Moreover, even if the motion court had believed first trial counsel's testimony that the missing video existed, such testimony would not have been particularly helpful to Marvin's case because first trial counsel never testified that the missing

7

video showed Marvin acting in self-defense. Instead, he testified it was "from a different angle" and showed:

> [Marvin] was coming from the catalog portion of Bass Pro[.] . . . And then there were two individuals -- I think [Female Victim] and [Male Victim] -- embracing in a hug and a kiss in between their vehicles when [Marvin] approached. And then you could see them snap their heads towards him. And then [Male Victim] walked towards [Marvin]. That's -- that's the video I remember.

Finally, the motion court did not base its denial of Marvin's claim of ineffective assistance of counsel on first trial counsel's lack of credibility. Rather, it found the State had laid a proper foundation for the admission of the surveillance footage.[4] Marvin fails to demonstrate the alleged error more likely than not altered the outcome of his post-conviction relief proceedings. Marvin's point is denied.

## Conclusion

The motion court's judgment is affirmed.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

---

[4] As to Marvin's claim that the State failed to provide exculpatory evidence, the motion court found the prosecutor's testimony to be credible and first trial counsel's testimony on the missing video not credible, noting first trial counsel agreed it had been years since he viewed the videos and he did not remember exactly what he had viewed. Marvin cannot demonstrate outcome determinate error on this issue since first trial counsel's testimony was that the "missing" video had been given to him by the State. Thus, even if the motion court had believed first trial counsel's testimony, Marvin's claim would still fail because it contradicts Marvin's claim that the State failed to produce the video.